902 A.2d 1185

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. CHRIS THOMAS, DEFENDANT-APPELLANT.

Argued November 30, 2005—Decided August 2, 2006.

*Frank J. Pugliese,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney; *Mr. Pugliese* and *Joan T. Buckley,* Designated Counsel, on the briefs).

*Joan E. Love,* Assistant Prosecutor, argued the cause for respondent (*Paula T. Dow,* Essex County Prosecutor, attorney).

*Carol M. Henderson,* Assistant Attorney General, argued the cause for amicus curiae, Attorney General of New Jersey (*Peter C. Harvey,* Attorney General, attorney).

Justice LaVECCHIA delivered the opinion of the Court.

This appeal requires us to consider a challenge to a mandatory extended-term sentence imposed on a repeat drug offender pursu-

ant to *N.J.S.A.* 2C:43–6(f). Defendant frames the issue as whether his Sixth Amendment rights were violated when the court, and not a jury, made the determination that his prior convictions supported the finding of two recidivism-based aggravating factors, which led to the court's imposition of a sentence above the presumptive for the extended-term range. As part of our consideration of defendant's sentencing claim, we also necessarily address the constitutionality of *N.J.S.A.* 2C:43–6(f).

## I.

## A.

On July 17, 1997, police officers from an undercover task force of the Newark Police Department arrested defendant Chris Thomas after observing him engage in two illegal drug transactions in an area known for drug trafficking. Defendant was indicted for third-degree possession of heroin, in violation of *N.J.S.A.* 2C:35–10(a)(1); third-degree possession of heroin with intent to distribute, in violation of *N.J.S.A.* 2C:35–5(b)(3); and third-degree possession of heroin with intent to distribute within 1000 feet of school property, in violation of *N.J.S.A.* 2C:35–7. After a five-day trial, a jury found defendant guilty of all three counts of the indictment.

The State moved for imposition of a mandatory extended term under *N.J.S.A.* 2C:43–6(f), which provides in relevant part:

A person convicted of manufacturing, distributing, dispensing or possessing with intent to distribute any dangerous substance ... or of distributing, dispensing or possessing with intent to distribute on or near school property or buses under section 1 of P.L.1987, c. 101 (C. 2C:35–7), who has been previously convicted of manufacturing, distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog, shall upon application of the prosecuting attorney be sentenced by the court to an extended term as authorized by subsection c. of N.J.S. 2C:43–7, notwithstanding that extended terms are ordinarily discretionary with the court.

At the sentencing hearing the court found, and the parties agreed, that the statutory requirements for extended-term sentencing were satisfied because defendant had seven prior convic-

tions predominantly involving drug offenses. The court merged the counts and sentenced defendant above the statutory presumptive for the extended-term range, imposing a sentence of ten years of incarceration with a five-year period of parole-ineligibility. *N.J.S.A.* 2C:43–6(f), 2C:24–7(c), 2C:43–7(a)(4), 2C:44–1f(1). In determining defendant's sentence, the court found the presence of aggravating factor three, *N.J.S.A.* 2C:44–1(a)(3) ("[t]he risk that the defendant will commit another offense"), and aggravating factor nine, *N.J.S.A.* 2C:44–1(a)(9) ("[t]he need for deterring the defendant and others from violating the law."). The court did not find that any mitigating factors were applicable.

Defendant appealed and, in an unpublished, per curiam decision, the Appellate Division affirmed the conviction and sentence. As to the latter, the panel rejected defendant's argument that his rights to due process and to a jury trial were violated when the sentencing court made factual findings in support of its determination to sentence defendant above the statutory presumptive sentence within the extended term range. Defendant petitioned this Court for certification, which we granted limited to the issue of defendant's extended term sentence. *State v. Thomas*, 185 *N.J.* 268, 883 *A.2d* 1064 (2005).

## II.

Defendant contends that the court improperly based its findings in support of aggravating factors on facts that had not been found by the jury, thus impermissibly imposing a sentence above the maximum otherwise applicable by virtue of the jury's verdict alone. He maintains that jury findings were necessary, even for the recidivism-based aggravating factors of three and nine, *N.J.S.A.* 2C:44–1(a)(3) and (9), because the court's findings in respect of those factors did not rest exclusively on the existence of defendant's prior convictions. *See State v. Abdullah*, 184 *N.J.* 497, 506 n. 2, 878 *A.2d* 746 (2005). Although our decision in *State v. Natale*, 184 *N.J.* 458, 878 *A.2d* 724 (2005), had not been issued as of either the time of defendant's sentencing or the Appellate

Division's consideration of this matter, defendant relies on *Natale* as supportive of the contention that his sentence in excess of the statutory presumptive for the extended-term range must be vacated.

According to defendant the sentencing court stated that it was not relying on defendant's prior convictions. Recognizing that his argument may be based on an over reading of a misstatement by the court or a transcription error,[1] defendant argues in the alternative that although the aggravating factors of risk of recidivism, *N.J.S.A.* 2C:44–1(a)(3), the extent and seriousness of a defendant's criminal record, *N.J.S.A.* 2C:44–1(a)(6) (asserted by the State but not found by the court), and the need for deterrence, *N.J.S.A.* 2C:44–1(a)(9), are related to prior-conviction evidence, each requires findings that encompass more than the mere fact of the past conviction.

Although defendant does not advance any challenge to the mandatory extended-term statute, the State responds by first setting forth the reasons that *N.J.S.A.* 2C:43–6(f) on its face should be found not to contravene any Sixth Amendment rights of a defendant. According to the State, the statute is not vulnerable under *Blakely v. Washington,* 542 *U.S.* 296, 124 *S.Ct.* 2531, 159 *L.Ed.*2d 403 (2004), because a recidivism exception has been carved out in Sixth Amendment jurisprudence and that exception permits a sentencing court to consider the fact of defendant's prior record when determining whether defendant is extended-term eligible. A separate jury finding as to the existence of the prior conviction, therefore, is unnecessary. In addition, the State asserts that *Natale* does not entitle defendant to re-sentencing. The State contends that *Natale* did not prohibit courts from sentencing

---

[1] Defendant is referring to the court's statement recorded and transcribed as follows: "As to the motion for extended term, I'm not counting the defendant's prior criminal record because I'm taking that into consideration in granting the motion for an extended term." In context, it appears that the court simply was indicating that it would not be impermissibly counting defendant's criminal history twice. *See State v. Dunbar,* 108 *N.J.* 80, 91–92, 527 *A.2d* 1346 (1987).

above the presumptive when the court is applying only the traditional "recidivism factors" of *N.J.S.A.* 2C:44–1(a)(3) and (9), based on consideration of a defendant's prior convictions.

## III.

### A.

We begin our analysis of Sixth Amendment case law with a matter that originated in this State. In *Apprendi v. New Jersey,* 530 *U.S.* 466, 468–69, 120 *S.Ct.* 2348, 2351, 147 *L.Ed.*2d 435, 442 (2000), the United States Supreme Court considered a Sixth Amendment challenge to New Jersey's "hate crime" statute that had permitted imposition of a sentence beyond the statutory maximum if the court found, by a preponderance of the evidence, that the defendant had acted "with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation, or ethnicity." *N.J.S.A.* 2C:44–3(e) (repealed 2001). In a five to four decision, the Supreme Court declared that statute to be violative of a defendant's Fourteenth Amendment due process rights and the notice and jury trial guarantees of the Sixth Amendment, holding that *"[o]ther than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi, supra,* 530 *U.S.* at 490, 120 *S.Ct.* at 2362–63, 147 *L.Ed.*2d at 455 (emphasis added); *see also Jones v. United States,* 526 *U.S.* 227, 248–49, 119 *S.Ct.* 1215, 1226–27, 143 *L.Ed.*2d 311, 329 (1999) (holding same previously in respect of due process clause of Fifth Amendment).

The prior-conviction exception that the Court recognized in connection with sentence enhancement requirements followed from the Court's earlier decision in *Almendarez–Torres v. United States,* 523 *U.S.* 224, 118 *S.Ct.* 1219, 140 *L.Ed.*2d 350 (1998). In *Almendarez–Torres,* the Court held that the government need not include in an indictment, and have a jury find, the fact of a

defendant's prior conviction for purposes of determining whether a sentence's maximum could be increased based on the prior conviction. *Id.* at 226–27, 118 *S.Ct.* at 1222, 140 *L.Ed.*2d at 357. Justice Breyer wrote the majority opinion, in which Chief Justice Rehnquist, Justices O'Connor, Kennedy, and Thomas joined. The question was whether the statute that provided for the sentence enhancement "define[d] a separate crime or simply authorize[d] an enhanced penalty." *Ibid.* The Court concluded that the statute was "a penalty provision, which simply authorize[d] a court to increase the sentence for a recidivist." *Ibid.* And, as the Court observed, recidivism "is as typical a sentencing factor as one might imagine." *Id.* at 230, 118 *S.Ct.* at 1224, 140 *L.Ed.*2d at 359; *see also id.* at 243, 118 *S.Ct.* at 1230, 140 *L.Ed.*2d at 368 (calling recidivism "a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence.")

The majority opinion in *Apprendi, supra,* authored by Justice Stevens, and joined by Justices Scalia, Souter, Thomas, and Ginsburg, described *Almendarez–Torres* as "represent[ing] at best an exceptional departure from the historic practice" of requiring that sentence-enhancing factors be included in the indictment, submitted to the jury, and proved beyond a reasonable doubt. 530 *U.S.* at 487, 120 *S.Ct.* at 2361, 147 *L.Ed.*2d at 453. Although the Court ultimately recognized a prior-conviction exception to the notice and jury requirements that it otherwise imposed in *Apprendi,* the majority opinion signaled that its signatories were not free from uncertainty about maintaining the exception based on *Almendarez–Torres. Apprendi, supra,* 530 *U.S.* at 489–90, 120 *S.Ct.* at 2362, 147 *L.Ed.*2d at 454 (stating that "it is arguable that *Almendarez–Torres* was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivism issue were contested. . . ."). Casting further doubt about the future of *Almendarez–Torres,* Justice Thomas, the only member of the *Almendarez–Torres* majority to join the majority in *Apprendi,* declared in a separate opinion that *Almendarez–Torres* had been decided incorrectly. *Apprendi, supra,* 530 *U.S.* at 520–21, 120 *S.Ct.* at 2379, 147 *L.Ed.*2d at 473–74 (Thomas, J., concurring).

Nonetheless, *Apprendi* authorized an exception permitting courts to use prior convictions in sentence-enhancement determinations and, twice since, the Court restated its holding in *Apprendi* with the prior-conviction-exception language intact. *See Blakely v. Washington,* 542 *U.S.* 296, 313, 124 *S.Ct.* 2531, 2543, 159 *L.Ed.*2d 403, 420 (2004) (holding that Washington statute, which contained a provision allowing for sentence enhancement if defendant acted with "deliberate cruelty," constituted offense element that required jury finding); *United States v. Booker,* 543 *U.S.* 220, 226–27, 125 *S.Ct.* 738, 746, 160 *L.Ed.*2d 621, 639 (2005) (holding that "the Sixth Amendment as construed in *Blakely* " applied to courts' implementation of federal sentencing guidelines). *Blakely, supra,* held that a defendant's Sixth Amendment rights are violated whenever the sentence that is imposed exceeds the maximum sentence authorized by virtue of the jury verdict or the defendant's admissions at a plea hearing, unless the sentence enhancement is either the result of the fact of a prior criminal conviction or the defendant had consented to judicial fact-finding for sentencing purposes. 542 *U.S.* at 301, 303, 124 *S.Ct.* at 2536, 2537, 159 *L.Ed.*2d at 412, 413; *see also Booker, supra,* 543 *U.S.* at 243–44, 125 *S.Ct.* at 755–56, 160 *L.Ed.*2d at 650 (applying *Blakely* with prior-conviction exception intact).

On the heels of *Blakely* and *Booker,* however, a majority of the Court reignited debate about the viability of *Almendarez–Torres* in *Shepard v. United States,* 544 *U.S.* 13, 125 *S.Ct.* 1254, 161 *L.Ed.*2d 205 (2005). The question in *Shepard, supra,* was whether a sentencing court, acting pursuant to the Armed Career Criminal Act (ACCA), 18 *U.S.C.A.* § 924(e) (2000 & Supp. II 2002), could examine police reports or complaints when determining whether a prior guilty plea to burglary constitutes a conviction of a "violent felony." 544 *U.S.* at 15, 125 *S.Ct.* at 1257, 161 *L.Ed.*2d at 211. The ACCA mandates a fifteen-year minimum sentence for any person who has committed a specified federal firearms violation so long as that person has three prior convictions for "violent felonies." *Ibid.* The ACCA includes "burglary" in its definition of a "violent felony." 18 *U.S.C.A.* § 924(e) (2000 & Supp. II 2002).

Previously the Court had held that the ACCA's use of the term "burglary" includes only "generic burglary," which requires that three elements be present: "[i] unlawful or unprivileged entry into, or remaining in, [ii] a building or structure, [iii] with intent to commit a crime." *Taylor v. United States*, 495 *U.S.* 575, 598, 110 *S.Ct.* 2143, 2158, 109 *L.Ed.*2d 607, 627 (1990). The *Taylor* Court further instructed that when a sentencing court engages in its inquiry into whether a previous trial conviction constitutes a conviction of a "generic burglary," the court may examine the statutory definition of the offense, charging documents, and jury instructions. *Id.* at 602, 110 *S.Ct.* at 2160, 109 *L.Ed.*2d at 629.

Similarly, in *Shepard, supra,* authored by Justice Souter, and joined in full by Justices Stevens, Scalia, and Ginsberg, a plurality "limit[ed] the scope of judicial factfinding on the disputed generic character of a prior plea, just as *Taylor* constrained judicial findings about the generic implication of a jury's verdict." 544 *U.S.* at 25–26, 125 *S.Ct.* at 1263, 161 *L.Ed.*2d at 217. Sentencing courts were prohibited from delving into police reports or complaint applications when determining the nature of a prior burglary conviction for purposes of ACCA sentencing. *Id.* at 15, 125 *S.Ct.* at 1257, 161 *L.Ed.*2d at 211. Thus, the Shepard Court limited the recidivism analysis by requiring that the "evidence of generic conviction be confined to records of the convicting court approaching the certainty of the record of conviction in a generic crime State." *Id.* at 23, 125 *S.Ct.* at 1261, 161 *L.Ed.*2d at 216. Concern for a defendant's Sixth and Fourteenth Amendment rights led the *Shepard* Court to reject the government's argument that *Almendarez–Torres* supported "a wider evidentiary cast" for sentencing courts to use, stating that notwithstanding that the disputed fact could "be described as a fact about a prior conviction, it [was] too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to *Jones* and *Apprendi,* to say that *Almendarez–Torres* clearly authorizes a judge to resolve the dispute." *Id.* at 21, 25, 125 *S.Ct.* at 1260, 1262, 161 *L.Ed.*2d at 214, 217.

Justice Thomas joined in the Court's holding, but declined to join the part of the opinion that he deemed inconsistent with his belief that to allow a court to determine any sentence enhancing factor, including recidivism, would cause "constitutional error." *Id.* at 27–28, 125 *S.Ct.* at 1263–64, 161 *L.Ed.*2d at 218–19 (Thomas, J., concurring). The Justice commented further that "*Almendarez–Torres* ... has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez–Torres* was wrongly decided." *Id.* at 27, 125 *S.Ct.* at 1264, 161 *L.Ed.*2d at 219 (citations omitted). That a majority of the Justices have expressed concern about, even disapproval of, *ibid.*, the *Almendarez–Torres* holding, has led some courts and commentators to speculate as to its future viability and how states' sentencing practices may use prior convictions to enhance the sentences of recidivist defendants.[2] Against that backdrop we turn to New Jersey's current sentencing practice.

---

[2] *See, e.g., United States v. Camacho–Ibarquen,* 410 *F.*3d 1307, 1316 n. 3 (11th Cir.2005)(per curiam)(noting that recent decisions "may arguably cast doubt on the future prospects of Almendarez–Torres's holding regarding prior conviction"); *United States v. Promise,* 255 *F.*3d 150, 181 (4th Cir.2001)(Luttig, J., concurring)(observing that "tenor of the Court's majority opinion in Apprendi," "the overarching principles upon which the Court's decision rested," and "much of the opinion's critical language" "is unmistakably to the effect that the Constitution would require a holding that all facts that increase a defendant's sentence must be proven to the jury beyond a reasonable doubt"); *United States v. Mack,* 229 *F.*3d 226, 239 n. 5 (3d Cir.2000)(Becker, C.J., concurring)(expressing apprehension about Almendarez–Torres because although "Apprendi incorporated the Almendarez–Torres holding into its own, ... the Apprendi majority went out of its way to cast the future viability of Almendarez–Torres into question," and "five sitting justices are now on record as saying that Almendarez–Torres was wrongly decided."); Benjamin J. Priester, *Symposium: Constitutional Formalism and the Meaning of Apprendi v. New Jersey,* 38 *Am. Crim L.Rev.* 281, 291 n. 64 (2001)("although presently still good law, it seems likely *Almendarez–Torres* ... soon will be overruled."); Amy Luria, Constitutional Development, *Traditional Sentencing Factors v. Elements of an Offense: The Questionable Viability of Almendarez–Torres v. United States,* 7 *U. Pa. J. Const. L.* 1229, 1230 (2005)(concluding that "[t]he Supreme Court's rulings in *Apprendi v. New Jersey, Blakely v. Washington,* and *Shepard v. United States* have stripped away Almendarez–Torres's stare decisis value.").

## B.

In the wake of *Blakely,* the use of presumptive sentencing in this State was challenged and eliminated in *State v. Natale,* 184 *N.J.* 458, 878 *A.*2d 724 (2005).

*Natale* considered whether *Blakely's* holding, that "a sentence based on judicial factfinding that exceeds the maximum sentence authorized by either a jury verdict or a defendant's admissions at a plea hearing runs afoul of the Sixth Amendment right to trial by jury," was applicable to our system of presumptive sentencing. *Id.* at 465–66, 878 *A.*2d 724. We concluded that "a sentence above the presumptive statutory term based solely on a judicial finding of aggravating factors, other than a prior criminal conviction, violates a defendant's Sixth Amendment jury trial guarantee." *Id.* at 466, 878 *A.*2d 724. Further, we held that, "[t]o bring [New Jersey's Code of Criminal Justice (Code)] into compliance with the Sixth Amendment in a way that the Legislature would have intended, we are compelled to eliminate presumptive terms from the sentencing process." *Ibid.* We rejected a remedial proposal that would have required all aggravating sentencing factors to be submitted to a jury, noting that the Code instead "provides for a strong judicial role in sentencing," *id.* at 486, 878 *A.*2d 724, and that we did not believe that the Legislature's preference would be to surrender that judicial role in order to comply with the Constitution. *Id.* at 486–87, 878 *A.*2d 724 (internal quotation marks omitted). Moreover, because the Code's "aggravating factors enumerated in *N.J.S.A.* 2C:44–1(a), for the most part, represent[ed] the traditional factors that judges historically have weighed in sentencing a defendant within the statutory range," *id.* at 486, 878 *A.*2d 724, we instructed that, "[h]ereafter, without reference to presumptive terms, judges will sentence defendants within the statutory range after identifying and weighing the applicable mitigating and aggravating factors." *Id.* at 466, 878 *A.*2d 724.[3]

---

[3] We also held that the principles established in *Natale, supra,* would be given "pipeline retroactivity" effect "to defendants with cases on direct appeal as of

The companion case of *State v. Abdullah,* 184 *N.J.* 497, 499, 878 *A.*2d 746 (2005), held that a court's discretionary powers to sentence a defendant to life imprisonment for murder, to impose a period of parole disqualification and to impose consecutive sentences, did not run afoul of the Constitution as interpreted by *Apprendi* and *Blakely.* None of those sentencing determinations involved a term greater than the statutorily authorized maximum. *Id.,* at 508, 510, 513–14, 878 *A.*2d 746. On Abdullah's burglary conviction, however, the sentencing court increased the defendant's sentence above the statutory maximum of the presumptive sentence based on aggravating factors (1) (the crime was especially heinous, cruel, or depraved), (3), (6), and (9). *Id.* at 505, 878 *A.*2d 746. The sentencing court's finding that the nature of the crime was especially heinous, cruel, or depraved was not a fact found by the jury and we could not determine whether that finding also was used by the court to support aggravating factors (3) and (9). *Id.* at 505–06, 878 *A.*2d 746. Therefore, we found it necessary to remand for resentencing on the burglary conviction. *Id.* at 506, 878 *A.*2d 746.

In a footnote that has taken on enhanced significance in this appeal, we added that "we might have come to a different result" had the sentencing court "specifically found that aggravating factors (3), (6), and (9) related to the defendant's prior convictions as the basis for increasing defendant's [burglary] sentence." *Id.* at 506 n. 2, 878 *A.*2d 746. Citing *Apprendi* and *Almendarez–Torres* for the proposition that the "fact of a prior conviction" may be used when increasing a sentence above the statutory maximum, we said that

[a]ggravating factors (3), (6), and (9), *arguably,* are inextricably linked to the recidivism exception. In a discretionary sentencing system in which the court decides the weight to give to a prior criminal conviction and how high on the scale to increase the sentence, the court naturally would consider the risk a defendant will re-offend and the need to deter. We do not know what value a court can give to a criminal conviction in our system without considering those factors.

the date of [the] decision and to those defendants who raised *Blakely* claims at trial or on direct appeal." 184 *N.J.* at 494, 878 *A.*2d 724.

Our decision in *Abdullah* did not resolve whether a court's finding of any of the so-called "recidivism" aggravating factors of (3), (6), and (9) could be regarded as based exclusively on the "fact" of a prior conviction, or whether a finding of any of those factors necessarily encompassed additional fact-finding made impermissible under *Blakely* and *Apprendi*. Rather, we anticipated, without deciding, the issue raised in the present appeal: whether a sentencing court's finding of factors (3) (risk of repeat offense, *N.J.S.A.* 2C:44–1(a)(3)), and (9) (need for deterrence, *N.J.S.A.* 2C:44–1(a)(9)) fit within *Blakely's* prior-conviction exception.

The State, and the Attorney General as amicus, urge this Court to conclude that it is permissible for a sentencing court to find those aggravating factors as derivative of finding the fact of the prior conviction. The defendant contends that a finding of factors (3), (6), and (9), though related to prior-conviction evidence, requires findings in addition to the fact that defendant has been convicted of a crime and, therefore, a jury must find those factors before they can be used to sentence a defendant above the presumptive for the range. We therefore consider two issues in respect of defendant's sentencing in light of the present status of *Blakely's* prior-conviction exception: use of defendant's prior convictions to trigger sentencing under *N.J.S.A.* 2C:43–6(f), and use of his prior convictions when finding that aggravating factors (3) and (9) support imposition of a sentence above the presumptive applicable to the enhanced-sentence range.

IV.

A.

▮ *N.J.S.A.* 2C:43–6(f) requires a sentencing court to impose an enhanced-range sentence when the prosecutor applies for such relief. The language of 2C:43–6(f) clearly indicates that the Legislature meant enhancement to be mandatory: a person *"shall* upon application of the prosecuting attorney *be sentenced by the*

*court to an extended term."* *See generally* Norman J. Singer, 1A *Sutherland Statutes and Statutory Construction* § 25:4 (6th ed.2000)(noting that "[w]hether a statute should be given mandatory ... effect is ... a question of statutory construction to which all of the rules and principles of construction are applicable ... [; however,] [u]nless the context otherwise indicates a use of the word 'shall' (except in future tense) indicates a mandatory intent."); *see also Harvey v. Bd. of Chosen Freeholders,* 30 *N.J.* 381, 391, 153 *A.*2d 10 (1959) (observing that question is one of intent when determining whether statute was meant to have mandatory effect and that generally "the words 'must' and 'shall' are ... mandatory."). In addition to the use of the word "shall," 2C:43–6(f) otherwise reflects an unmistakable intent to require a sentencing court to impose a mandatory extended-term sentence when the statute's predicates are present. Indeed, the Legislature emphasized that 2C:43–6(f) required a mandatory extended term by noting its awareness that "extended terms are ordinarily discretionary with the court." Accordingly, case law implementing *N.J.S.A.* 2C:43–6(f) uniformly has respected its mandatory nature. *See, e.g., State v. Fowlkes,* 169 *N.J.* 387, 391, 778 *A.*2d 422 (2001)(explaining that *N.J.S.A.* 2C:43–6(f) "requires a court to impose an extended term with a period of parole ineligibility for a repeat drug offender, but only upon the application of the prosecutor."); *State v. Brimage,* 153 *N.J.* 1, 11, 706 *A.*2d 1096 (1998)(noting that once prosecutor makes *N.J.S.A.* 2C:43–6(f) application for extended-term sentencing, "the sentencing judge has no discretion to reject the application"); *State v. Lagares,* 127 *N.J.* 20, 31, 601 *A.*2d 698 (1992)(stating that "once a prosecutor applies for an extended sentence under Section 6f and establishes a prior conviction, the sentencing judge has no discretion to reject the enhanced sentence."). Procedurally, when a prosecuting attorney makes application under *N.J.S.A.* 2C:43–6(f), the sole determination for the sentencing court is to confirm that the defendant has the predicate prior convictions to qualify for enhanced sentencing. No other fact-finding, or collateral assessment of the prior convictions, takes place. The statute does not permit the court to

engage in any further analysis because when the predicate prior sentences are present, enhanced sentencing must occur. Thus, the sentencing court's sole fact-finding in respect of whether a defendant meets the requirements for a mandatory enhanced-term sentence, is based on an objective determination—the existence of prior convictions. *See Almendarez–Torres, supra,* 523 *U.S.* at 230, 118 *S.Ct.* at 1224, 140 *L.Ed.*2d at 359 (noting that finding fact of prior conviction is perhaps purest form of recidivism determination that courts make).

That some question the viability of *Almendarez–Torres* does not provide a principled basis for invalidating *N.J.S.A.* 2C:43–6(f). The Supreme Court has held that a court, as opposed to a jury, may make the discrete finding of the existence of a prior conviction when enhancing a defendant's sentence without violating a defendant's Sixth Amendment rights, *Almendarez–Torres, supra,* 523 *U.S.* at 226–27, 118 *S.Ct.* at 1222, 140 *L.Ed.*2d at 357, and has reaffirmed that holding on more than one occasion. *See Apprendi, supra,* 530 *U.S.* at 490, 120 *S.Ct.* at 2362–63, 147 *L.Ed.*2d at 455; *Blakely, supra,* 542 *U.S.* at 301, 303, 124 *S.Ct.* at 2536–2537, 159 *L.Ed.*2d at 412, 413; *Booker, supra,* 543 *U.S.* at 243–44, 125 *S.Ct.* at 755–56, 160 *L.Ed.*2d at 650. Nor did the Supreme Court use *Shepard* as an opportunity to disavow *Almendarez–Torres.* We are acutely aware, as are other state courts, of "[the Supreme] Court's obvious prerogative to overrule its own decisions" and, accordingly, like those other courts, we will "follow Almendarez–Torres until the Supreme Court rules otherwise". *People v. Rivera,* 5 *N.Y.*3d 61, 800 *N.Y.S.*2d 51, 833 *N.E.*2d 194, 198 (2005) (holding that no Sixth Amendment violation was committed when court found fact of defendant's two prior convictions, conferring statutory persistent-offender status on defendant); *see also State v. Hughes,* 154 *Wash.*2d 118, 110 *P.*3d 192, 202 (2005) (observing *Blakely's* exception that permits judges to find existence of prior convictions).

In sum, the State began its argument by asserting that the statute is constitutionally sound. We agree. *N.J.S.A.* 2C:43–6(f)

operates as a sentence enhancer on the basis of a *judicial* fact-finding that is authorized under *Apprendi* and *Blakely*, to wit, the finding of prior convictions. Accordingly, we hold that no Sixth Amendment violation resulted from the sentencing court's finding of the fact of defendant's prior convictions, which required imposition of a mandatory enhanced sentence under *N.J.S.A.* 2C:43–6(f). We turn, therefore, to defendant's sentencing within the enhanced-term range.

## B.

 *Natale, supra,* held that its principles would be given "pipeline retroactivity" effect. 184 *N.J.* at 494, 878 *A.*2d 724. Defendant falls within the class of defendants entitled to request *Natale* re-sentencing.

Our *Natale* remedy was constructed on the premise that we would no longer require sentencing courts to commence their exercise of sentencing discretion from the starting point of a presumptive sentence. *Id.* at 487, 878 *A.*2d 724. With respect to pre-*Natale* ordinary-term sentences, defendants whose sentences were above the presumptive sentence have been vacated and remanded for re-determination without use of a required presumptive sentence, regardless of whether the particular above-the-presumptive sentence was based on aggravating factors three and nine. As a practical matter, sentencing records have not always provided clear evidence that findings in support of aggravating factors (3), (6), and/or (9) were based exclusively on the fact of the prior conviction. Defendant is entitled to equivalent treatment for his extended-term sentence, as are other similarly situated defendants. And, future sentencing practice post-*Natale* will permit sentencing courts to find all aggravating factors, including factors (3) and (9) whether or not they are based "exclusively" on the fact of a prior conviction so as to fall within the *Almendarez–Torres* prior-conviction exception.

That said, we do not base our holding on that consideration alone. As noted, the *Natale* remedy for the New Jersey Code of

Criminal Justice, post-*Blakely*, did not hinge on discrete determinations of whether a particular sentencing factor must be decided by a jury, or may be decided by a sentencing court. We see no reason now to risk constitutional error by straining to interpret which past sentencing decisions utilizing factors (3) and (9) fit within our best prediction of how far we may stretch the presently allowed prior-conviction exception. Rather, it is more prudent, constitutionally, to construe narrowly the "facts" that *Blakely's* prior-conviction exception permits a sentencing court to consider. Therefore, we hold that that judicial fact-finding must be limited to the finding of the existence of the prior conviction. For defendants sentenced prior to *Natale*, we have no confidence that any who were sentenced above the presumptive sentence on the basis of aggravating factors (3), or (6), or (9) were sentenced exclusively on the mere judicial fact-finding of the existence of a prior conviction.

Indeed, implicit in a sentencing court's assessment of the defendant's risk of recidivism (factor (3)), the seriousness and extent of a defendant's prior criminal record (factor (6)), and the need to deter defendant and others (factor (9)) is a qualitative assessment that we want and expect the court to make. A court's findings assessing the seriousness of a criminal record, the predictive assessment of chances of recidivism, and the need to deter the defendant and others from criminal activity, do all relate to recidivism, but also involve determinations that go beyond the simple finding of a criminal history and include an evaluation and judgment about the individual in light of his or her history. *See, e.g., State v. Dunbar*, 108 *N.J.* 80, 96–97, 527 *A.*2d 1346 (1987)(finding aggravating factor three on assessment of prior record and illustrating evaluative nature of court's examination of defendant's "lengthy juvenile record, his adult record including violations of parole and probation, [and] his failure to respond to any rehabilitative programs"); *State v. Devlin*, 234 *N.J.Super.* 545, 557–58, 561 *A.*2d 280 (App.Div.), *certif. denied*, 117 *N.J.* 653, 569 *A.*2d 1348 (1989) (finding, in death by auto case, need to deter as aggravating factor based on court's evaluation of defendant's

prior conviction record coupled with assessment of defendant's likelihood to avoid alcohol). Indeed, it cannot be disputed that aggravating factors (3) and (9) at issue here can be based on assessment of a defendant beyond the mere fact of a prior conviction, or even in the absence of a criminal conviction. *See, e.g., State v. Varona*, 242 *N.J.Super.* 474, 491, 577 *A*.2d 524 (App.Div.), *certif. denied*, 122 *N.J.* 386, 585 *A*.2d 389 (1990)(finding aggravating factor three despite lack of prior record); *State v. Travers*, 229 *N.J.Super.* 144, 154, 550 *A*.2d 1281 (App.Div.1988) (finding presence of aggravating factor nine in drunk-driving death by auto case, in part due to defendant's lack of awareness of alcoholism problem); *see also Hughes, supra*, 110 *P*.3d at 204 (concluding similarly in respect of "rapid recidivism" aggravating factor that requires additional factual assessments and conclusions beyond mere finding of criminal history). Our *Natale* remedy will continue to permit such qualitative assessments by sentencing courts in finding aggravating factors (3), (6), and (9) going forward. We decline to take an artificial or crabbed view of judicial determinations made about those same aggravating factors now, merely to avoid affording to persons such as defendant the opportunity to have his sentence re-determined.

In conclusion, we hold that a remand for defendant's re-sentencing is required. In accordance with *Natale, supra*, the court should re-determine defendant's sentence within the extended-term range based on aggravating and mitigating factors found to be present. 185 *N.J.* at 486, 888 *A*.2d 454. In balancing those factors, the court shall not be required to start from the fixed point of the previously applicable statutory presumptive sentence for the extended-term range. *Id.* at 489, 888 *A*.2d 454.

## V.

The judgment of the Appellate Division in respect of defendant's sentence is reversed and this matter is remanded for resentencing.

*For reversal and remandment*—Chief Justice PORITZ and Justices LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA-SOTO—6.

*Opposed*—None.