SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Cynthia Rivera (A-7-20) (084419)**

**Argued October 1, 2021 -- Decided December 29, 2021**

**SOLOMON, J., writing for a unanimous Court.**

In this appeal, the Court considers whether a defendant's youth can serve as an aggravating factor in sentencing.

Defendant Cynthia Rivera admitted to planning and participating in the armed robbery of Justin Garcia, resulting in serious injuries to Garcia and the murder of his friend, Andrew Torres. At the time of the offenses, defendant was eighteen years old and in a relationship with Martin Martinez. Defendant met and went to a motel with a friend, Garcia, and Torres. Once there, defendant texted Martinez the name of the motel so he could "come down . . . to commit the robbery." Later, Martinez and another man arrived, carrying handguns. Torres was shot and killed upon opening the door; Garcia was also shot and wounded. Jewelry and a phone were taken from Garcia. Defendant's friend identified defendant, who turned herself in a few weeks later.

Defendant pled guilty to aggravated manslaughter and assault and to conspiracy to commit robbery. At the time of sentencing, defendant was nineteen years old with no prior criminal history, no juvenile record, and no arrests. Defendant expressed deep regret for her actions and told the court she had severed her relationship with Martinez, who defendant stated was physically, mentally, and emotionally abusive to her.

The sentencing court applied two aggravating factors -- the risk the defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3), and the need for deterrence, id. at (a)(9) -- and two mitigating factors -- the absence of a prior record, id. at (b)(7), and willingness to cooperate with law enforcement, id. at (b)(12). The court did not address mitigating factor nine -- unlikeliness to reoffend -- which the State had conceded. The court weighed aggravating factor three more heavily than the other factors, relying in large part on defendant's youth and finding that defendant "hasn't had enough time to begin . . . a history of criminal activity, which I most certainly think would have been the case."

Concluding that the aggravating factors substantially outweighed the mitigating factors, the court sentenced defendant accordingly. The Appellate Division affirmed, and the Court granted certification. 244 N.J. 183 (2020).

1

**HELD:** A defendant's youth may be considered only as a mitigating factor in sentencing and cannot support an aggravating factor. On resentencing, the sentencing court should consider mitigating factor fourteen -- that "the defendant was under [twenty six] years of age at the time of the commission of the offense." N.J.S.A. 2C:44-1(b)(14). The weight to be given to that factor is within the sentencing court's discretion.

1. Crimes are classified as first, second, third, or fourth degree in descending order of seriousness, and each degree carries its own prescribed sentencing range. In determining the appropriate sentence to impose within the provided range, the sentencing court must first identify any relevant aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b) and explain the evidential basis for each. The court must then balance those factors by qualitatively assessing each factor and assigning it appropriate weight given the facts of the case. Findings of any factors must be supported by competent, credible evidence in the record to ensure that speculation and suspicion do not infect the sentencing process. Mitigating factors that are suggested in the record or brought to the court's attention should not be ignored. When the sentencing court fails to provide a qualitative analysis of the relevant sentencing factors on the record or considers an aggravating factor that is inappropriate to a particular defendant or to the offense at issue, the reviewing court may remand for resentencing. Finally, the sentencing court is required to "view a defendant as [that defendant] stands before the court on the day of sentencing." State v. Jaffe, 220 N.J. 114, 124 (2014). In Jaffe, the Court held that evidence of post-offense conduct -- cooperative, rehabilitative, or otherwise -- must be fully considered in assessing and weighing the statutory factors. Ibid. (pp. 13-16)

2. This appeal turns on the sentencing court's consideration of defendant's youth in according great weight to aggravating factor three -- the risk of reoffense -- while giving minimal weight to mitigating factor seven -- the absence of a prior record. In deciding whether a defendant is likely to offend in the future, sentencing courts frequently look to the defendant's criminal history. The absence of a criminal record will not preclude application of aggravating factor three so long as it is supported by other credible evidence in the record; in exceptional circumstances, courts may find it necessary to apply seemingly contradictory aggravating and mitigating factors. When doing so, the sentencing court must explain how it reconciles those two findings by providing greater detail as to the weight assigned to each aggravating and mitigating factor. (pp. 17-18)

3. The Court reviews cases that have noted the importance of considering youth in making sentencing decisions. In response to those court decisions, the Legislature added youth as a statutory mitigating factor. See N.J.S.A 2C:44-1(b)(14). (pp. 18-19)

4. To support a finding of aggravating factor three, the record must contain evidence demonstrating a likelihood of re-offense -- be it expert testimony, or the defendant's criminal history, lack of remorse, premeditation, or other competent evidence. But in making the finding here, the sentencing court engaged in impermissible speculation that

defendant would have engaged in other criminal conduct but did not have the opportunity to do so because of her youth.  The court reached its conclusion even though defendant had never been arrested or adjudicated delinquent as a juvenile and the State conceded mitigating factor nine -- defendant is unlikely to reoffend.  And, as in Jaffe, defendant had taken meaningful post-offense steps towards rehabilitation.  The presumption that a defendant's youth may have prevented the defendant from having a criminal record cannot support a finding of aggravating factor three, and the Court therefore vacates defendant's sentence.  The resentencing court should give due consideration to all credible evidence in the record and all relevant sentencing factors on the day defendant stands before the court.  The court is free to apply mitigating factor fourteen.  (pp. 19-22)

**REVERSED and REMANDED for resentencing.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and PIERRE-LOUIS join in JUSTICE SOLOMON's opinion.**

SUPREME COURT OF NEW JERSEY

A-7 September Term 2020

084419

State of New Jersey,

Plaintiff-Respondent,

v.

Cynthia Rivera,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| October 1, 2021 | December 29, 2021 |

Morgan A. Birck, Assistant Deputy Public Defender,
argued the cause for appellant (Joseph E. Krakora, Public
Defender, attorney; Morgan A. Birck, of counsel and on
the briefs).

Patrick F. Galdieri, II, Assistant Prosecutor, argued the
cause for respondent (Yolanda Ciccone, Middlesex
County Prosecutor, attorney; Patrick F. Galdieri, II, of
counsel and on the briefs, and Joie D. Piderit, Acting
Assistant Prosecutor, on the briefs).

William P. Cooper-Daub, Deputy Attorney General,
argued the cause for amicus curiae Attorney General of
New Jersey (Andrew J. Bruck, Acting Attorney General,
attorney; William P. Cooper-Daub, of counsel and on the
brief).

1

In this appeal, the Court considers whether a defendant's youth can serve as an aggravating factor in sentencing. In this case, defendant Cynthia Rivera, nineteen, admitted to planning and participating in the armed robbery of Justin Garcia, resulting in serious injuries to Garcia and the murder of Garcia's friend, Andrew Torres.

In sentencing defendant pursuant to her plea agreement with the State, the sentencing court applied two aggravating factors -- the risk that the defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3), and the need for deterrence, id. at (a)(9) -- and two mitigating factors -- the absence of a prior record, id. at (b)(7), and willingness to cooperate with law enforcement, id. at (b)(12). The court weighed aggravating factor three, the risk of reoffense, more heavily than the other factors, relying in large part on defendant's youth. Thus, the court concluded that the aggravating factors substantially outweighed the mitigating factors and sentenced defendant in accordance with that finding. The Appellate Division affirmed.

We now reverse, vacate defendant's sentence, and remand the matter for resentencing. Consistent with both this Court's precedent and the intent of the Legislature in recently adopting youth as a mitigating statutory factor, N.J.S.A.

2C:44-1(b)(14); L. 2020, c. 110 (effective immediately), we hold that a defendant's youth may be considered only as a mitigating factor in sentencing. Additionally, we hold that on resentencing, the sentencing court should consider mitigating factor fourteen -- that "the defendant was under [twenty six] years of age at the time of the commission of the offense." Of course, the weight to be given to that factor is within the sentencing court's discretion.

## I.

We derive the following recitation of the facts from the record before the sentencing court. At the time of the offenses that gave rise to the sentencing question before us, defendant was eighteen years old and in a relationship with twenty-year-old Martin Martinez. It is not clear from the record whether or how defendant and Martinez knew Garcia, but it appears that they saw pictures of money and jewelry Garcia posted on Instagram and hatched a plan to rob him. Defendant contacted Garcia and then arranged to meet her friend Chelsey Mendoza, Garcia, and his friend Torres in the Bronx. Defendant informed Mendoza that, although the four would agree to go to the Loop Inn Motel in Woodbridge, New Jersey, the real plan was to rob Garcia at a bodega in the Bronx before reaching the motel.

At the bodega, defendant and Garcia remained in the car while Mendoza and Torres went into the store. Two unknown men then approached the car

3

with guns, in what defendant believed to be an attempted robbery of Garcia, but Garcia pulled a gun from his glove compartment and drove off. After that, Garcia confronted defendant, accused her of setting him up, and took her cellphone to prevent her from contacting anyone.

Defendant, Mendoza, Garcia, and Torres then proceeded to the motel in Woodbridge.[1] On the way to the motel, defendant was able to recover her phone and texted Martinez the message, "he pulled on [sic] gun on me I'm scared NJ." Once they arrived at the motel, defendant went into the bathroom with her phone to text Martinez the name of the motel so he could "come down to Woodbridge to commit the robbery." For the remainder of the evening, Garcia, Torres, Mendoza, and defendant lazed in the hot tub and used recreational drugs in their motel room.

In the early morning hours, there was a knock on the motel room door. Torres opened the door and was immediately shot and killed. Martinez and a man named John Mingo then entered the room, both carrying handguns. One of the men shot and seriously wounded Garcia. Defendant did not see who shot either victim but did see Martinez "standing over [Garcia] with a gun in his hand." Jewelry and a phone were taken from Garcia. After fleeing the

---

[1] The record does not reflect where or how the parties reconvened after the attempted robbery.

scene, defendant, Martinez, Mingo, and Mendoza returned to the Bronx, where they pawned the items taken during the robbery.

Detectives identified Martinez from the name provided on the motel front desk's sign-in form. The search for Martinez led detectives to Mendoza, who provided a statement recounting the night of the robbery and identifying defendant. Arrest warrants were issued for both Martinez and defendant, but initial attempts to locate them were unsuccessful. A few weeks later, defendant turned herself in to authorities.

## II.

A Middlesex County indictment charged defendant with first-degree murder, felony murder, and robbery, as well as attempted murder, conspiracy to commit both murder and robbery, and weapons offenses, endangering, and obstruction.

Eleven months later, pursuant to a plea agreement, defendant pled guilty to first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), as amended from felony murder; second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), as amended from attempted murder; and second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2(a)(1) and :15-1(a)(1). In exchange for defendant's guilty plea and her promise to cooperate with the State, the remaining charges were dismissed, and the State recommended an aggregate

5

sentence of fifteen years' incarceration subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

At her sentencing hearing, defendant admitted to planning the robbery with Martinez, contacting Garcia, and arranging for them to meet. She further admitted to traveling to the Loop Inn Motel, keeping Garcia occupied in anticipation of the robbery, and communicating their location to Martinez. Defendant also admitted that she knew Martinez was carrying a gun and believed that he would use it in the robbery.

Defense counsel opened by noting that defendant was eighteen years old at the time of the robbery and "t[ook] full responsibility for everything that occurred." He went on to explain that, while defendant did set up the victim with the intent to rob him, "she had no idea that these horrible, horrific results would occur." Even so, he told the judge that defendant was "looking to be punished. She's looking to go to jail." Counsel emphasized defendant's substantial cooperation with the State and her lack of a criminal history as mitigating factors.

Defendant also spoke on her own behalf, expressing deep regret and accepting "responsibility for [her] actions" by going to prison. Defendant also made known to the court that she had made some substantial life changes since her arrest. Notably, defendant severed her relationship with co-defendant

6

Martinez, who defendant stated was physically, mentally, and emotionally abusive to her. Defendant then learned she was pregnant with Martinez's child and, while incarcerated, gave birth to a son, who is now in the custody of defendant's mother. A high school dropout, defendant stated that she planned to enroll in a cosmetology certification program upon her transfer to state prison.

In response to defendant's sentencing arguments, the State submitted to the court that the fifteen-year sentence detailed in the plea agreement was fair. The prosecutor noted the need to deter others from crossing state lines to commit "heinous offenses" in New Jersey as a basis for applying aggravating factor nine -- the need to deter the defendant and others from violating the law. The State then conceded mitigating factors seven and twelve, noting that defendant had no criminal record and had cooperated substantially with the State's investigation. The State further conceded mitigating factor nine, N.J.S.A. 2C:44-1(b)(9) (the defendant's character and attitude "indicate that the defendant is unlikely to commit another offense"), remarking that "every defendant pretty much gets the benefits of mitigating factor nine when they show remorse, so she gets that."

At the time of sentencing, defendant was nineteen years old with no prior criminal history, no juvenile record, and no arrests. Her pre-sentence

7

investigation revealed prolonged exposure to alcohol and prescription drugs, as well as a history of treatment at several mental health facilities. Nevertheless, the sentencing court found "there was a risk that [defendant would] commit another offense."

The court noted that it gave "great weight to aggravating factor three," given that this was "a planned event, calculated, thought out and carried out, even when . . . there was a bump in the road" at the bodega. The court further explained,

> I would find that there is a risk that this defendant will commit another offense, because I attach great weight -- as I indicated with Mr. Martinez, reading the discovery and reading what's been presented and per the statements provided by each, the way this case lines up is that this never would have happened if Ms. Rivera and Mr. Martinez hadn't put it together, they hadn't hatched this scheme. And to ultimately take someone and lure them into this level of victimization is of great concern to the Court and to the [S]tate as well.

The court also gave "great weight" to aggravating factor nine because of the nature and circumstances of the offense, stating that the victims were "lured to their demise by [defendant]." The court expressed concern with "the level of depravity associated with [defendant]'s decision making" given that she had one target, Garcia, but had "no problem" including a second victim, Torres, "who wasn't even the focus of it."

The court did not address mitigating factor nine -- defendant's character and attitude make her unlikely to reoffend -- which the State had conceded. The court discussed and applied mitigating factor twelve for defendant's "willingness to cooperate with law enforcement authorities in this particular case." Finally, the court addressed mitigating factor seven, lack of prior criminal conduct. The court determined that the factor applied but found that it should be afforded only minimal weight in light of defendant's age:

> Per the state, I would credit her [mitigating factor seven], but give it minimal weight, the fact that she has no history of prior delinquency or criminal activity and led a law-abiding life for a substantial period of time before the commission of the present offense. She is [nineteen]. She's at the beginning of her adulthood. She has no prior juvenile history, so to speak, but I give it very little weight, because I find that if she had not been captured in this particular instance, her mind frame and the way [of] her thinking and her relationship with Mr. Martinez, could very well have resulted in additional crimes being committed.
>
> Though I am most certainly not sentencing her for anything in the future that I think she could have committed, I am just finding that, you know, if any -- if nothing else, she hasn't had enough time to begin a crime -- begin a history of criminal activity, which I most certainly think would have been the case and that being the reason why I gave great weight to the fact that the risk she'll commit another offense, aggravating factor three.

Finding that the aggravating factors substantially outweighed the mitigating factors, the court imposed the recommended sentence: fifteen

9

years' incarceration for aggravated manslaughter; ten years for aggravated assault; and ten years for conspiracy to commit murder, all subject to NERA, and to run concurrently, for an aggregate sentence of fifteen years' imprisonment with an eighty-five percent period of parole ineligibility.

Defendant appealed her sentence, arguing that the trial court failed to provide an adequate explanation for applying both aggravating factor three and mitigating factor seven, which stand in counterpoise. She contended that the sentencing judge should have given more weight to mitigating factor seven and less weight to aggravating factor three. The State countered that the court provided an adequate explanation and its findings were well supported by the record.

The Appellate Division affirmed defendant's sentence by summary order.

We granted defendant's petition for certification. 244 N.J. 183 (2020). We also granted the Attorney General's motion for leave to appear as amicus curiae.

### III.

Defendant contends that her sentence is excessive in light of several errors made by the sentencing court. First, defendant challenges the great weight that the sentencing court accorded to aggravating factor three -- her

10

likelihood to reoffend. Although defendant concedes that she helped plan the robbery, she maintains that she did not intend for anyone to be shot, and therefore her alleged planning was an improper basis for applying aggravating factor three to her manslaughter conviction. She further argues that the sentencing court erred by using her youth against her, because there is no evidence that she will go on to develop a record as the sentencing court suggested. Defendant also asserts that youth may be considered only as a mitigating factor at sentencing, and never as an aggravating factor. She emphasizes that this view is supported by prior decisions of both this Court and the United States Supreme Court, the Legislature's addition of youth as a statutory mitigating factor by enacting N.J.S.A. 2C:44-1(b)(14), and the widely accepted science regarding the age-crime curve and brain development.

Defendant also argues that the sentencing court failed to give adequate weight to mitigating factor seven, lack of criminal history, noting that the State conceded this mitigating factor. She alleges that the court sentenced her based on a hypothetical future record, rather than as she stood before the court on the day of sentencing, a first-time offender entitled to the full weight of mitigating factor seven. Finally, defendant submits that the sentencing court erred by failing to consider mitigating factor nine, that she was unlikely to reoffend, a factor also conceded by the State. Defendant notes that she had no prior

11

record, had cooperated with law enforcement, and was remorseful. She further stresses that she was a new mother and no longer in a relationship with Martinez, who was abusive and influenced her participation in the crime.

The State counters that the sentencing court's findings regarding the applicable aggravating and mitigating factors are supported by competent, credible evidence in the record. It contends that the judge appropriately applied and accorded great weight to aggravating factor three based on the planning involved in the crime and defendant's dedication to carrying it out. The State further argues that mitigating factor nine did not apply for the same reasons provided by the judge in finding aggravating factor three. Although the State conceded the applicability of mitigating factor nine at sentencing, it notes that the sentencing court had an independent duty to find each factor only if supported by the record. The State also contends that the judge appropriately applied only minimal weight to mitigating factor seven, lack of criminal history, as defendant had not "led a law-abiding life for a substantial period of time." The State maintains that any reference to defendant's age was merely a byproduct of the required explanation of the factor and that her youth was not improperly used against her. Finally, the State argues that the court was not required to treat defendant's youth as a mitigating factor.

12

Amicus curaie the Attorney General largely reiterates and supports the State's arguments. The Attorney General further contends that the sentencing court never linked defendant's age to a predicted likelihood of re-offense and merely relied on it to reduce the weight of mitigating factor seven. The Attorney General ultimately argues that overturning defendant's sentence would disrupt the critical discretion afforded to sentencing courts and "upend" current sentencing law.

IV.

A.

We begin our discussion with the standard of review applied to trial court sentencing decisions. On review, appellate courts are deferential to sentencing determinations and "must not substitute [their] judgment for that of the sentencing court." State v. Fuentes, 217 N.J. 57, 70 (2014). The sentence must therefore be affirmed unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found were not "based upon competent credible evidence in the record;" or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience." State v. Roth, 95 N.J. 334, 364-65 (1984). Although "[a] sentence imposed pursuant to a plea agreement is presumed to be reasonable," such a sentence may still be vacated if it does not

13

adhere to the sentencing provisions of our Code of Criminal Justice. Fuentes, 217 N.J. at 70-71.

Crimes are classified as first, second, third, or fourth degree in descending order of seriousness, and each degree carries its own prescribed sentencing range. N.J.S.A. 2C:43-6(a). In determining the appropriate sentence to impose within the provided range, the sentencing court must first identify any relevant aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b) and explain the evidential basis for each. State v. Case, 220 N.J. 49, 64 (2014). The court must then balance those relevant aggravating and mitigating factors by qualitatively assessing each factor and assigning it appropriate weight given the facts of the case at hand. Fuentes, 217 N.J. at 72-73.

By requiring courts to identify and balance the mitigating and aggravating factors, "the Code 'established a consistent framework for guiding sentencing discretion.'" State v. Kiriakakis, 235 N.J. 420, 437 (2018) (quoting State v. Maguire, 84 N.J. 508, 530-31 (1980)). That framework serves "the Code's paramount goal of uniformity in sentencing, ensuring 'that similarly situated defendants receive comparable sentences.'" Ibid. (quoting Case, 220 N.J. at 63). To that end, sentencing courts must provide "a careful and

14

deliberate analysis before a sentence is imposed," grounded in "a thorough understanding of the defendant and the offense." Fuentes, 217 N.J. at 71.

Findings of any factors "must be supported by competent, credible evidence in the record" to ensure that "[s]peculation and suspicion [do] not infect the sentencing process." Case, 220 N.J. at 64. Mitigating factors that are suggested in the record or brought to the court's attention should not be ignored. Ibid. Thus, when the sentencing court "fails to provide a qualitative analysis of the relevant sentencing factors on the record" or "considers an aggravating factor that is inappropriate to a particular defendant or to the offense at issue," the reviewing court "may remand for resentencing." Fuentes, 217 N.J. at 70.

Finally, the sentencing court is required to "view a defendant as [that defendant] stands before the court on the day of sentencing." State v. Jaffe, 220 N.J. 114, 124 (2014). In Jaffe, the defendant was sentenced nearly a year after pleading guilty, during which time he had made significant life changes, including getting sober, attending support groups, finding gainful employment, and assuming the role of "de facto" father to his girlfriend's child. Id. at 116-17. However, the sentencing judge declined to consider evidence of those post-offense rehabilitative efforts in assessing mitigating factors, despite

15

acknowledging that defendant's pre-sentence report had grown "somewhat stale." Id. at 117-18.

We reversed and remanded for resentencing, holding that, because "a defendant should be assessed as he stands before the court on the day of sentencing, . . . the sentencing court must consider a defendant's relevant post-offense conduct in weighing aggravating and mitigating factors." Id. at 116. In so deciding, we remarked that

> [t]he Code does not . . . require the trial court to ignore a defendant's individual characteristics and circumstances. To the contrary, the Legislature listed as "general purposes" of the sentencing statute the furtherance of "the correction and rehabilitation of offenders," N.J.S.A. 2C:1-2(b)(2), and "differentiat[ion] among offenders with a view to a just individualization in their treatment," N.J.S.A. 2C:1-2(b)(6). Thus, "the Legislature codified to a certain extent the traditional emphasis on individualized sentencing," resulting in a "tension between an individualized sentencing approach on the one hand, and the reforms aimed at sentencing uniformity on the other." [(State v. Randolph, 210 N.J. 330, 346 (2012).]
>
> [Id. at 120-21.]

Accordingly, evidence of post-offense conduct -- cooperative, rehabilitative, or otherwise -- must be fully considered in assessing and weighing the statutory factors. Id. at 124. Remand may be necessary when "a sentencing court failed to find mitigating factors that clearly were supported by the record." State v. Bieniek, 200 N.J. 601, 608 (2010).

16

B.

This appeal turns on the sentencing court's consideration of defendant's youth in according great weight to aggravating factor three -- "[t]he risk that the defendant will commit another offense," N.J.S.A. 2C:44-1(a)(3) -- while giving minimal weight to mitigating factor seven -- "[t]he defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense," N.J.S.A. 2C:44-1(b)(7).

In deciding whether a defendant is likely to offend in the future, sentencing courts frequently look to the defendant's criminal history. See, e.g., State v. Dalziel, 182 N.J. 494, 502 (2005) (finding "the extent of a defendant's prior record" supported the sentencing court's conclusion regarding his risk for re-offense). We acknowledge, however, that the absence of a criminal record will not preclude application of aggravating factor three so long as it is supported by other credible evidence in the record. Case, 220 N.J. at 67. That assessment "involve[s] determinations that go beyond the simple finding of a criminal history and include an evaluation and judgment about the individual in light of his or her history." State v. Thomas, 188 N.J. 137, 153 (2006). For example, a sentencing judge may reasonably find aggravating

factor three when presented with evidence of a defendant's lack of remorse or pride in the crime. State v. O'Donnell, 117 N.J. 210, 216 (1989).

In exceptional circumstances, courts may find it necessary to apply seemingly contradictory aggravating and mitigating factors. Fuentes, 217 N.J. at 80. When doing so, the sentencing court must "explain how it reconciles those two findings" by providing greater detail as to the weight assigned to each aggravating and mitigating factor and how those factors are balanced with respect to the defendant. Id. at 81. We have previously requested this type of detailed, reasoned explanation when presented with the conflict between aggravating factor three, risk of re-offense, and mitigating factor seven, no criminal history. Case, 220 N.J. at 67.

## C.

Because defendant's age and youth at sentencing is central to this appeal, we note the importance of considering youth in making sentencing decisions. In State v. Dunbar, 108 N.J. 80, 95 (1987), we recognized that a "defendant's relative youth ordinarily would inure to his benefit" in a determination of whether to apply an extended sentence. More recently, we extended application of the factors prescribed by the United States Supreme Court in Miller v. Alabama, 567 U.S. 460 (2012), to situations where a juvenile is facing a term of imprisonment that is the practical equivalent to life

18

without parole. State v. Zuber, 227 N.J. 422, 429-30 (2017). In doing so, we built upon the U.S. Supreme Court's "clear message" that "'children are different' when it comes to sentencing, and 'youth and its attendant characteristics' must be considered at the time a juvenile is sentenced to life imprisonment without the possibility of parole." Id. at 429 (quoting Miller, 567 U.S. at 465, 480). We further urged the Legislature to "consider enacting a statute that would provide for later review of juvenile sentences that have lengthy periods of parole ineligibility." Id. at 430.

In response to those court decisions, the Legislature added youth as a statutory mitigating factor. See N.J.S.A 2C:44-1(b)(14) (effective October 19, 2020) ("The defendant was under 26 years of age at the time of the commission of the offense."). Recommended by "the first annual report of the New Jersey Criminal Sentencing and Disposition Commission," the change is meant to "broaden the court's consideration of age as a mitigating factor for determining sentences." S. Judiciary Comm. Statement to A. 4373 1 (L. 2020, c. 110).

V.

Turning to the facts presented in this appeal, by applying and affording great weight to aggravating factor three, risk of re-offense, the sentencing judge relied on the nature of the offense and defendant's role in planning the

19

crime and luring the victims into a trap -- facts that were established in the record and sufficient to support a finding of aggravating factor three. Then, in explaining his decision to afford minimal weight to the countervailing mitigating factor seven, the judge stated that "[defendant] hasn't had enough time to begin . . . a history of criminal activity, which I most certainly think would have been the case and that being the reason why I gave great weight to the fact that the risk she'll commit another offense, aggravating factor three."

This reasoning is based on an impermissible presumption. As noted above, findings of any aggravating or mitigating "factor must be supported by competent, credible evidence in the record" to ensure that a defendant is not sentenced based on "[s]peculation and suspicion." Case, 220 N.J. at 64. To support a finding of aggravating factor three, the record must contain evidence demonstrating a likelihood of re-offense -- be it expert testimony, or the defendant's criminal history, lack of remorse, premeditation, or other competent evidence. But in making the finding here, the sentencing court engaged in impermissible speculation that defendant would have engaged in other criminal conduct but did not have the opportunity to do so because of her youth.

The court reached its conclusion even though defendant had never been arrested or adjudicated delinquent as a juvenile and the State conceded

20

mitigating factor nine -- defendant is unlikely to reoffend. In doing so, the court failed to provide detail about the weight assigned to each aggravating and mitigating factor and how those factors were balanced with regard to the defendant. See Fuentes, 217 N.J. at 81.

The sentencing court was obliged to consider defendant as "she [stood] before the court on the day of sentencing." Jaffe, 220 N.J. at 124. As in Jaffe, defendant had taken meaningful post-offense steps towards rehabilitation, including ending her abusive relationship with co-defendant Martinez and making educational plans. Defendant had no prior juvenile adjudications, no arrests, and no criminal record. Defendant cooperated substantially with law enforcement and expressed sincere remorse for her role in the crime. She stood before the court as a first-time offender and should have been considered as one.

In conclusion, the presumption that a defendant's youth may have prevented the defendant from having a criminal record cannot support a finding of aggravating factor three. We therefore hold that youth may be considered only as a mitigating factor in sentencing and cannot support an aggravating factor. Accordingly, we must vacate defendant's sentence and remand for resentencing.

On resentencing, the court should give due consideration to all credible evidence in the record and all relevant sentencing factors on the day defendant stands before the court. Randolph, 210 N.J. at 354. In other words, both defendant and the State are entitled to bring all relevant factors to the court's attention, so long as they are supported by competent and credible evidence.[2] Also, the court on resentencing is free to consider defendant's youth at the time of the offense and apply mitigating factor fourteen, which was given immediate effect in all sentencing proceedings on or after October 19, 2020. See N.J.S.A 2C:44-1(b)(14); L. 2020, c. 110.

## VI.

For the reasons expressed, we reverse the judgment of the Appellate Division and remand for resentencing proceedings consistent with this opinion.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and PIERRE-LOUIS join in JUSTICE SOLOMON's opinion.

---

[2] Although the State conceded mitigating factor nine, the sentencing judge failed to address this factor in his findings. A sentencing court is, of course, not required to find any factor it concludes is unsupported by the record. However, those factors which are brought to the court's attention by counsel should not be ignored. Case, 220 N.J. at 64.