29 A.3d 1079 (2011)
422 N.J. Super. 521
In the Matter of the STATE BOARD OF EDUCATION'S DENIAL OF PETITION TO ADOPT REGULATIONS IMPLEMENTING the NEW JERSEY HIGH SCHOOL VOTER REGISTRATION LAW.
No. A-5681-09T3
Superior Court of New Jersey, Appellate Division.
Submitted April 4, 2011.
Decided April 25, 2011.
*1080 American Civil Liberties Union of New Jersey Foundation, attorneys for appellants American Civil Liberties Union of New Jersey, Project Vote, and Fair Elections *1081 Legal Network (Edward L. Barocas, Legal Director, of counsel and on the brief).
Paula T. Dow, Attorney General, attorney for respondents New Jersey Commissioner of Education and New Jersey State Board of Education (Lewis A. Scheindlin, Assistant Attorney General, of counsel; Daniel F. Dryzga, Jr., Deputy Attorney General, on the brief).
Before Judges LISA, REISNER, and SABATINO.
The opinion of the court was delivered by
SABATINO, J.A.D.
This case arises from an effort by appellants, three public interest organizations, to compel the Commissioner of Education ("the Commissioner") and the State Board of Education ("the State Board") to adopt regulations to implement the High School Voter Registration Law ("HSVRL"), N.J.S.A. 18A:36-27 to -28. For the reasons that follow, we affirm the denial of appellants' petition for rulemaking in part, and reverse it in part.

I.
In January 2010, appellants[1] submitted a petition for rulemaking to the Commissioner and the State Board proposing the adoption of an extensive set of regulations aimed at fostering increased voter registration and voting by students who turn the age of eighteen before their graduation from high school or nonpublic school. The petition was submitted pursuant to N.J.S.A. 52:14B-4(f), a provision in the Administrative Procedure Act ("APA") that enables interested parties to present a formal request to "an agency to adopt a new [administrative] rule, or amend or repeal any existing rule."
In support of their petition, appellants contended that existing measures to promote registration and voting by eligible students in New Jersey are inadequate. The petition further alleged that the Commissioner and the New Jersey Department of Education ("the Department") have failed to assure that high schools and nonpublic schools fulfill their statutory responsibility to provide voter registration forms and related educational materials to their students who reach the age of eighteen.
Among other things, appellants' petition cited to census data showing that in the 2008 presidential election only 52.5% of eligible New Jersey voters between the ages of eighteen and twenty-four had cast ballots, as compared with a much higher voting rate of 64.1% for all eligible citizens in the State. The petition also presented research from the Public Advocate suggesting that forty to sixty percent of New Jersey high schools were not in full compliance with their obligations under the HSVRL.
Notice of the Department's receipt of the rulemaking petition was duly published in the New Jersey Register. See 42 N.J.R. 595(a) (Feb. 16, 2010). No public hearings were conducted.
The State Board considered the petition at its monthly public meeting on June 16, 2010. Upon reviewing the petition, in consultation *1082 with the Commissioner and the Department, the State Board rejected appellants' request to adopt the proposed regulations. Shortly thereafter, the Department issued a public notice, explaining why the petition had been denied. See 42 N.J.R. 1629(a) (July 19, 2010).
The Department observed in its explanatory notice that the specific requirements the HSVRL imposes on school districts and nonpublic schools were already "clear and well understood." The Department further noted that, to promote compliance with the HSVRL by public schools, the Department had begun including, in a tri-annual monitoring instrument known as the Quality Single Accounting Continuum ("QSAC"),[2] a specific inquiry on the subject. That inquiry on the QSAC questionnaire requires public school districts to confirm that they are providing students with the voter registration forms and the voting-related materials mandated by the HSVRL.
The Department indicated that all of the 280 school districts it monitored in 2009 reported that they had provided their students with voter registration forms and election-related information. Similarly, all seventy of the districts that the Department reevaluated in 2009 reported that they had provided the necessary voter forms and information. These favorable responses, according to the Department, were verified by the various County Superintendents of Schools. Consequently, the Department "disagree[d] [with petitioners] that further rulemaking will improve current compliance with the law."
This appeal ensued. Appellants contend that the agency[3] has a mandatory obligation under the HSVRL to promulgate regulations, and that the agency has failed to meet that statutory responsibility. By way of remedy, appellants request that we issue an order compelling the agency to adopt regulations. Respondents, on the other hand, argue that the statute imposes no mandatory obligation to adopt regulations and, moreover, that no regulations are presently necessary.

II.

A.
We evaluate the issues before us based upon the limited administrative record developed in connection with the petition for rulemaking and the denial of that petition.[4] Before performing that evaluation, we examine the specific language of the applicable statute.
The HSVRL was enacted in 1985. It is a relatively short and straightforward statute, consisting of only two provisions: a substantive provision in N.J.S.A. 18A:36-27, *1083 followed by a rulemaking provision in N.J.S.A. 18A:36-28.
The substantive provision, N.J.S.A. 18A:36-27, as amended, presently reads in its entirety:
The board of education of each school district and the appropriate school officials in each nonpublic school shall provide a voter registration form, a summary of voter registration eligibility requirements, and material describing the role of a citizen and the importance of voting to each eligible high school pupil prior to the graduation date for the school year. This material shall be nonpartisan and conform to the provisions of N.J.S.[A.] 18A:42-4.
According to the Senate Education Committee's Statement to A-889the bill that, as modified, became the HSVRLthe law was prompted by legislative recognition that "[t]he lowest rates of voter registration and voting tend to occur among the youngest eligible citizens." Sen. Educ. Comm., Statement to Assembly Bill No. 889 (June 25, 1984). The legislation "represents an effort to address the problem by providing high school seniors with a voter registration form and nonpartisan material to inform the students of the importance of participating in the decisions of government through voting." Ibid.
A-889 passed in the Assembly by a unanimous vote of 66-0 and then passed in the Senate by a near-unanimous vote of 36-1. See N.J. Legislative Index, 1984-85. The bill was then presented to Governor Kean, who commended what he described as its "laudable" purposes, but who also found that the legislation in one aspect did not "embody the best method for effectuating" those purposes. See Conditional Veto of Governor Thomas Kean to A-889 (Jan. 8, 1985). In particular, Governor Kean observed that the bill "requires a voter registration drive which is duplicative of other efforts and would therefore fail in its purpose of registering newly enfranchised citizens." Ibid. Governor Kean suggested that the law's objectives "could be better effectuated by combining its provisions with the [then-] current election law [N.J.S.A. 19:32-2] requiring the March voter registration drive in all high schools." Ibid.
The Legislature promptly revised the bill to incorporate Governor Kean's suggestion. The bill was adopted in that revised form in January 1985 by a 72-0 vote in the Assembly, and by a 33-0 vote in the Senate. See N.J. Legislative Index, 1984-85.
The HSVRL became effective on February 7, 1985, and was not altered for over two decades. The statute was recently amended in 2010 to specify that the voter registration materials must be given to students prior to graduation day, so as to ensure that students who are eligible to register to vote, but not yet graduating, receive the material. The 2010 amendment also now requires that "a summary of voter registration eligibility requirements" be distributed to the students, along with material describing "the role of a citizen and the importance of voting." The 2010 amendment also deleted the HSVRL's prior reference to voter registration drives conducted by election boards under N.J.S.A. 19:31-2. See L. 2009, c. 281 (amending N.J.S.A. 18A:36-27).
The companion portion of the HSVRL, set forth in N.J.S.A. 18A:36-28, is the provision most critical to the present appeal. It states that:
The Commissioner of Education shall adopt pursuant to the "Administrative Procedure Act," [citation omitted] rules and regulations necessary to implement the provisions of this act.

[Emphasis added].
*1084 Appellants contend that the Legislature's use of the term "shall" in Section 36-28, compels respondents to adopt regulations implementing the HSVRL. Respondents disagree, arguing that the word "shall" in the statute should be construed in a non-mandatory fashion, leaving it to their discretion to determine if such regulations are "necessary" to implement the substantive terms of Section 36-27.
Appellants complain that no regulations have been adopted under the HSVRL ever since it became law over twenty-six years ago. Respondents acknowledge that no comprehensive regulations to implement the HSVRL for public and nonpublic schools have been enacted. However, respondents point to the recent regulations that were enacted in connection with the revision of the QSAC instrument.
The QSAC questionnaire now specifically includes a question (Question 11) under the "Student Conduct, School Safety and Security" section or the "Operations" segment, requiring public school districts and county special services school districts to confirm that the district "has provided a voter registration form and voting description material to each eligible high school student in compliance with N.J.S.A. 18A:36-27." See N.J.A.C. 6A:30 app. A at 16, app. B at 14. As "suggested documentation" to show the district's compliance, the QSAC questionnaire invites each district to present sample copies of the voting registration forms and the materials that the district distributes. Ibid. Question 11 is assigned a point value of one on a forty-one point evaluation scale for "Student Conduct, School Safety and Security" matters, a scale which is part of the QSAC's scoring system for "Operations" within the overall District Performance Review ("DPR").
Respondents concede that the QSAC is not administered to nonpublic schools. However, they contend that it is not necessary to do so, and that it is within their discretion to determine whether any affirmative measures are needed to assure that nonpublic schools comply with the HSVRL.

B.
Our scope of review here is a mixed one. As to the questions of statutory construction presented, we examine those legal questions de novo, and we are not bound by respondents' interpretation of the statute. Levine v. Dep't of Transp., 338 N.J.Super. 28, 32, 768 A.2d 192 (App. Div.2001) (citing G.S. v. Dep't of Human Servs., 157 N.J. 161, 170, 723 A.2d 612 (1999)); see also Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93, 312 A.2d 497 (1973). However, in the course of such de novo review, we are mindful of an administrative agency's day-to-day role in interpreting statutes "`within its implementing and enforcing responsibility.'" Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J.Super. 52, 56, 766 A.2d 312 (App.Div. 2001) (quoting In re Appeal by Progressive Cas. Ins. Co., 307 N.J.Super. 93, 102, 704 A.2d 562 (App.Div.1997)). "Generally, an appellate court should give considerable weight to a state agency's interpretation of a statutory scheme that the [L]egislature has entrusted to the agency to administer." In re Election Law Enforcement Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262, 989 A.2d 1254 (2010).
Once we have interpreted the meaning of a regulatory statute, our scope of review of an agency's decisions in applying the statute is more deferential. In general, we do not invalidate the decisions of administrative agencies unless they are proven to be contrary to law, unsupported by substantial credible evidence, or arbitrary, capricious, or unreasonable. See In re Herrmann, 192 N.J. 19, 27-28, 926 A.2d *1085 350 (2007); Aqua Beach Condo. Ass'n v. Dep't of Cmty. Affairs, 186 N.J. 5, 16, 890 A.2d 922 (2006); Henry v. Rahway State Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980).
In the specialized context of reviewing an agency's rulemaking decisions, courts ordinarily defer to the agency's peculiar expertise in the subject matter. See Bergen Pines Cnty. Hosp. v. Dep't of Human Servs., 96 N.J. 456, 474, 476 A.2d 784 (1984); see also In re Adoption of N.J.A.C. 10:52-5.14(d)(2) & (3), 276 N.J.Super. 568, 574-75, 648 A.2d 509 (App.Div.1994), certif. denied, 142 N.J. 448, 663 A.2d 1355 (1995). We do so because the Legislature's "`basic purpose of establishing agencies to consider and promulgate [administrative] rules is to delegate the primary authority of implementing policy in a specialized area to governmental bodies with staff, resources and expertise to understand and solve those specialized problems.'" In re Amendment of N.J.A.C. 8:31B-3.31 & 8:31B-3.51, 119 N.J. 531, 543, 575 A.2d 481 (1990) (quoting Bergen Pines, supra, 96 N.J. at 474, 476 A.2d 784). Consequently, the judicial review of an administrative rule or regulation typically is limited to deciding whether that rule or regulation is "arbitrary, capricious, unreasonable, or beyond the agency's delegated powers." In re N.J.A.C. 8:31B-3.31, supra, 119 N.J. at 544, 575 A.2d 481.

C.
Bearing in mind these standards of review, we now turn to the discrete issues before us. The initial and pivotal question is whether or not the language in N.J.S.A. 18A:36-28, respecting the adoption of regulations to implement the HSVRL, is mandatory or not. A key aspect of that analysis is the Legislature's use within Section 36-28 of the word "shall."
When according to statutes their plain meaning, "the word `may' ordinarily is permissive and the word `shall' generally is mandatory." Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 325, 744 A.2d 175 (2000); see also State v. Thomas, 188 N.J. 137, 149-51, 902 A.2d 1185 (2006); Harvey v. Bd. of Chosen Freeholders, 30 N.J. 381, 391, 153 A.2d 10 (1959); O'Shea v. Twp. of W. Milford, 410 N.J.Super. 371, 383, 982 A.2d 459 (App.Div.2009). "[U]nless the context otherwise indicates[,] a use of the word `shall' (except in future tense) indicates a mandatory intent." Thomas, supra, 188 N.J. at 150, 902 A.2d 1185 (quoting Norman J. Singer, 1A Sutherland Statutes and Statutory Construction § 25:4 (6th ed. 2000)).
In limited situations where the statutory context bespeaks an exception to this general principle, the word "shall" has been construed to connote a so-called "directory," or non-mandatory, meaning. In those rare situations, the word "shall" conveys only a suggestion that something be done, rather than a mandate to do it. This exception applies where the Legislature's use of the term "shall" only "relates to the form and manner in which the law is to be carried out." N.J. Educ. Assn. v. State, 412 N.J.Super. 192, 213, 989 A.2d 282 (App.Div.), certif. denied, 202 N.J. 347, 997 A.2d 232 (2010); see also State v. Jorn, 340 N.J.Super. 192, 196, 774 A.2d 507 (App. Div.2001); Franklin Estates, Inc. v. Twp. of Edison, 142 N.J.Super. 179, 184, 361 A.2d 53 (App.Div.1976), aff'd, 73 N.J. 462, 375 A.2d 658 (1977). In Jorn and in Franklin Estates, we concluded that such an exceptional construction of the word "shall" is only warranted if "no public benefit ensues and no private right is insured" by construing "shall" as imperative. Jorn, supra, 340 N.J.Super. at 196, 774 A.2d 507 (emphasis added) (quoting Franklin Estates, *1086 supra, 142 N.J.Super. at 184, 361 A.2d 53).
Here, the use of the term "shall" in N.J.S.A. 18A:36-28 is arguably tempered by an ensuing phrase in the same sentence of the provision: "necessary to implement the provisions of this act [the HSVRL]." N.J.S.A. 18A:36-28. Our analysis therefore hinges, to some degree, upon identifying who makes (or has made) the determination of "necessity" for regulations under the HSVRL: the Legislature or the agency.
The HSVRL does not say that regulations shall be adopted "if the Commissioner finds they are necessary." By comparison, the Legislature used such explicitly-deferential phraseology in N.J.S.A. 17:22-6.14a3, a 1971 statute regulating insurance brokers. That statute, unlike the HSVRL, specifically authorizes the Insurance Commissioner "to adopt, promulgate and enforce such rules and regulations as he determines to be necessary to implement this act." N.J.S.A. 17:22-6.14a3 (emphasis added). Nor does N.J.S.A. 18A:36-28 expressly qualify the potential necessity of regulations by saying, for instance, that the Commissioner shall adopt regulations "as may be necessary," an arguably more deferential formulation that appears in some other statutes.[5]
On the other hand, the Legislature did not make unmistakably clear in N.J.S.A. 18A:36-28 that it was mandating the Commissioner to adopt regulations. The statute could have stated, for example, that the Commissioner "shall adopt . . . regulations [which the Legislature has determined are] necessary to implement the provision of [the HSVRL]." Nor did the Legislature structure Section 36-28 in two-step fashion, as it has done elsewhere, by stating, first, that the agency "shall adopt" regulations and, second, that the agency "may alter and repeal" such regulations. See, e.g., N.J.S.A. 18A:4-15 (concerning the adoption of implementing regulations by the State Board as to certain other school laws).
We are thus left with a textual ambiguity as to the plain meaning of the statute. To resolve that ambiguity, we must attempt to ascertain the Legislature's intent, not just from the words of the statute itself, but also from the policies underlying the HSVRL, its legislative history, and general concepts of reasonableness. See DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). In that vein, we consider whether it is likely that the Legislature envisioned that the agency would enact at least some regulations to address the chronic problem of low registration and turnout by student voters.

*1087 D.
The public policies advanced by the HSVRL are obvious, strong, and undisputed. As the legislative history we have already cited reflects, the statute is designed to assure that students turning the age of eighteen are made aware of their right to vote and the importance of that right in our democracy. The parties agree that voter registration and turnout by young people in our State traditionally has been lower than that of other age groups. To address the problem, the Legislature enacted the HSVRL, notably by unanimous successive votes in the Assembly and by nearly-unanimous successive votes in the Senate. Governor Kean characterized the legislation as "laudable," only expressing one reservation about it in his conditional veto message.
Given these strong public policies, and their resounding support from the elective branches of State government in enacting the law, we conclude that the Legislature most likely desired an imperative meaning for the word "shall" in the HSVRL. The pertinent factors suggest, on balance, that the Legislature expected the Commissioner to adopt some form of regulations to carry out the mission set forth in the statute.
We recognize that the portion of N.J.S.A. 18A:36-27 directing schools to provide their students with "voter registration form[s]" is essentially clear on its face. However, the nature and extent of the contents of the written "summary of voter registration eligibility requirements" and the contents of the "material describing the role of a citizen and the importance of voting" that must be supplied to students under N.J.S.A. 18A:36-27 are not so obvious. Nor is the manner in which those materials are to be "provide[d]." We need not resolve what exactly the Legislature intended to be included in such materials, or how they should be provided to students.
We do, however, believe that the Legislature would not have imposed implementation responsibilities upon the Commissioner in N.J.S.A. 18A:36-28 if it had wanted the HSVRL to be completely self-administered by local school districts and nonpublic schools free of Statewide oversight by the Commissioner. Instead, it seems most probable and reasonable that the Legislature wanted the Commissioner to undertakein the form of uniform regulations formal measures to implement the HSVRL. Otherwise, it would have been superfluous for the Legislature to interject the Commissioner's regulatory oversight role within N.J.S.A. 18A:36-28. In construing a statute, we strive to give meaning to every provision and every word contained within that statute. See Med. Soc. of N.J. v. Dep't of Law & Pub. Safety, 120 N.J. 18, 26-27, 575 A.2d 1348 (1990); see also Paper Mill Playhouse v. Millburn Twp., 95 N.J. 503, 519, 472 A.2d 517 (1984).
Given the overall statutory framework of the HSVRL and the public policies implicated, we conclude that the term "shall" in N.J.S.A. 18A:36-28 is mandatory. The term should not be read in an exceptional fashion as merely a "directory" term. A mandatory reading of the HSVRL promotes a widely-accepted "public benefit," i.e., the education of young voters regarding their important role in our democracy and the encouragement of their participation at the polls. See Jorn, supra, 340 N.J.Super. at 196, 774 A.2d 507; Franklin Estates, supra, 142 N.J.Super. at 184, 361 A.2d 53.
For these reasons, we construe N.J.S.A. 18A:36-28 to impose a mandatory obligation upon respondents to craft and adopt some form of regulations "necessary to *1088 implement the provisions of [the HSVRL]." The necessity for the existence of such regulations has been ordained by the Legislature. However, we further read the statute to vest the agency with the sound discretion within its expertise to determine how expansive or limited those regulations should be as a matter of policy. The exercise of that discretion is subject to our review of whether the agency's conduct is arbitrary and capricious. In re N.J.A.C. 8:31B-3.31, supra, 119 N.J. at 544, 575 A.2d 481.
This leads us to assess what the agency has done to implement the HSVRL. The agency contends that it has sufficiently fulfilled its implementation role under N.J.S.A. 18A:36-28 through the inclusion of an HSVRL compliance question within the QSAC questionnaire. Appellants, on the other hand, maintain that the QSAC is insufficient to implement the HSVRL, and that the agency must adopt more ambitious and vigorous measures through rulemaking.
Significantly, the revision of the QSAC was accomplished through a formal rulemaking process, with customary public notice and comment. See 41 N.J.R. 3491(a) (Oct. 5, 2009) (rule proposal) and 42 N.J.R. 185(a) (Jan. 19, 2010) (rule adoption). Indeed, two of the appellants, ACLU-NJ and Project Vote, submitted written comments on the proposed rule. See 42 N.J.R. 185(a), 190-91. In those comments, ACLU-NJ and Project Vote joined other commenters in "applaud[ing]" the Department for amending the Operations DPR within the QSAC to address compliance with the HSVRL. See id. at 190 cmt. 57. Project Vote presented arguments similar to those that they are now making on this appeal, urging more ambitious measures to encourage eligible students to register and vote.
The Department's responses to the various comments about the QSAC were duly published in the New Jersey Register. 42 N.J.R. 185(a). Among other things, the Department rejected a suggestion by ACLU-NJ and other commenters that the QSAC indicator be revised to measure whether districts are conducting a "voter education program" for students eligible to register to vote. The Department responded that such a request went "beyond the scope of the NJQSAC." Id. at 190-91 cmt. 59. However, the Department did state in its published response that it "will provide technical assistance through guidance to school districts outside [the context of the] NJQSAC to ensure school districts [will] comply with this area of the law." Ibid.
The Department also specifically considered and rejected, again within the QSAC rulemaking process, a recommendation by Project Vote to fortify the voter registration indicator within the QSAC instrument. Project Vote's comment and the Department's response concerning that recommendation was summarized as follows:
62. COMMENT: The commenter suggested that the purpose of the voter registration indicator will be most successfully served if it: (1) references the language cited in the statute identifying the responsibilities for high schools; and (2) makes schools aware of contacts for providing training or a curriculum.
RESPONSE: The Department believes that including language cited in the statute identifying the responsibilities for high schools is not necessary to make the indicator more effective. Furthermore, with regard to making schools aware of contacts for providing training or a curriculum or a curriculum by including that language in the indicator, the [D]epartment believes that this request goes beyond the scope of *1089 NJQSAC. The [D]epartment, however, will provide technical assistance through guidance to school districts outside NJQSAC to ensure school districts to comply with the law.
[Id. at 191 cmt. 62 (commenter identification omitted).]
The Department also considered and rejected a suggestion by ACLU-NJ and other commenters that the QSAC form be revised to require school districts to furnish "a narrative explaining whether [they] facilitated collection of the [voter registration] forms and generally illustrate which practices were especially successful." Id. at 191 cmt. 60. In addition, the Department declined a suggestion by ACLU-NJ and other commenters to raise the point value of the QSAC indicator from a score of one to two. Id. at 191 cmt. 61.
Reasonable minds can differ about whether or not, as a policy matter, respondents should adopt more extensive and ambitious rules to implement the requirements of the HSVRL with respect to public school districts. Applying our limited standard of review, we are not persuaded that the agency's chosen approach is either arbitrary or capricious. See In re Herrmann, supra, 192 N.J. at 27-28, 926 A.2d 350. The agency has articulated reasonable grounds for not revising the QSAC further, and for not taking additional steps to assure that public schools are actually doing what they say they are doing to comply with the HSVRL.
Although the HSVRL, as we have read it, requires the agency to adopt some regulations to carry out its requirements, it does not curtail the agency's flexibility in deciding the best means to structure such regulations. If, over time, the regulations as they were recently revised in 2010 prove to be deficient in practice, appellants and other interested parties are free to renew their concerns by presenting the agency with relevant data and, if warranted, a new petition for rulemaking. The process in formulating the ultimate regulatory approach is necessarily a dynamic one, and preferably conducted without judicial interference. In sum, the Department's adoption of regulations at N.J.A.C. 6A:30-3.2 concerning public schools meets the minimal threshold prescribed by the HSVRL statute, and that approach is not manifestly arbitrary or capricious.
We reach a different conclusion, however, as to the agency's complete omission of regulations to implement the HSVRL in nonpublic schools. Respondents admit that the QSAC is not administered to nonpublic schools, and that they have not enacted any regulations to help assure that such schools comply with the HSVRL. The HSVRL plainly covers both public schools and "appropriate school officials in each nonpublic school." N.J.S.A. 18A:36-27 (emphasis added).
Even according respondents the deference that they are due within their regulatory sphere, their total omission of regulations covering nonpublic schools falls short of what the HSVRL requires. Such inaction is arbitrary and capricious. Cf. In re N.J.A.C. 10:82-1.2, supra, 117 N.J. at 324-28, 566 A.2d 1154 (similarly repudiating an agency's inaction in failing to adopt necessary standards and in rejecting petitions for rulemaking to rectify the agency's inaction).
Consequently, we remand the issue of implementation of the HSVRL for nonpublic schools to the agency for further consideration, and for the prospective adoption of regulations concerning such schools. Such regulations must be adopted following an opportunity for notice and comment by interested parties, including but not limited to appellants and nonpublic school administrators, consistent with the rulemaking *1090 procedures generally prescribed by the APA. In the course of developing such regulations for nonpublic schools, the agency is free, of course, to reconsider the desirability of adopting a comprehensive set of regulations covering both public and nonpublic school compliance with the HSVRL.

III.
For these reasons, respondents' denial of appellants' petition for rulemaking is affirmed in part, and reversed and remanded in part, consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Appellants are the American Civil Liberties Union of New Jersey ("ACLU-NJ"), Project Vote, and the Fair Elections Legal Network ("FELN"). The latter two entities are national, nonpartisan organizations that seek to promote voting by young people and by voters from other demographic groups that traditionally have lower turnout. Appellants' petition for rulemaking was also joined by the Department of the Public Advocate ("the Public Advocate"), an agency that has since been disbanded by legislation. N.J.S.A. 52:27EE-86.
[2] The QSAC evaluates each public school district in five key component areas: instruction and program, personnel, fiscal management, operating, and governance. See N.J.S.A. 18A:7A-10. "Based on a district's compliance with the [QSAC] indicators, the [C]ommissioner shall assess district capacity and effectiveness and place the district on a performance continuum that will determine the type and level of oversight and technical assistance and support the district receives." Ibid.
[3] For simplicity, we shall refer collectively to the State Board, the Department, and the Commissioner as "the agency," or as "respondents," mindful that N.J.S.A. 18A:36-28 refers solely to "the Commissioner."
[4] In response to an inquiry posed by this court in a telephonic status conference with both counsel, the Deputy Attorney General submitted a letter on March 28, 2011, confirming that neither the Division of Elections nor the Department of Law & Public Safety are undertaking any initiatives at this time concerning voting rights of high school students that could affect or moot the present appeal.
[5] See, e.g., N.J.S.A. 20:4-10 (providing that the Commissioner of Community Affairs "shall adopt such rules and regulations as may be necessary to assure" various objectives of the statute concerning relocation assistance, and "may prescribe such other regulations and procedures, consistent with the provisions of this act, as he deems necessary or appropriate to carry out this act") (emphasis added); N.J.S.A. 56:8-4 (providing that "[t]o accomplish the objectives and to carry out the duties prescribed by" the Consumer Fraud Act, the Attorney General, "in addition to other powers conferred upon him by this act, may . . . promulgate such rules and regulations, and prescribe such forms as may be necessary, which shall have the force of law") (emphasis added); but see In re Petitions for Rulemaking, N.J.A.C. 10:82-1.2 & 10.85-4.1, 117 N.J. 311, 315-24, 566 A.2d 1154 (1989) (construing that N.J.S.A. 44:8-111, which states that the Commissioner of Human Services "shall . . . [p]romulgate, alter and amend from time to time such rules, regulations and directory orders as may be necessary for the administration of State aid and for the carrying out of any provisions of [welfare] law regulating the same," obligated the Commissioner to specify in a regulation a "standard of need" for welfare recipients) (emphasis added).