**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1287-20

DEPETRIS FAMILY
ASSOCIATES 2, LLC,

     Plaintiff-Appellant,

v.

MEDFORD TOWNSHIP
ZONING BOARD OF
ADJUSTMENT,

     Defendant-Respondent.

_____

Argued April 26, 2021 – Decided May 17, 2021

Before Judges Sabatino and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-2149-19.

Robert S. Baranowski, Jr., argued the cause for appellant (Hyland Levin Shapiro, LLP, attorneys; Robert S. Baranowski, Jr., and Megan Knowlton Balne, on the briefs).

Christopher J. Norman argued the cause for respondent (Craig, Annin & Baxter, LLP, and Platt & Riso, PC, attorneys; Christopher J. Norman, on the brief).

PER CURIAM

This land use appeal arises from an application by plaintiff DePetris Family Associates 2, LLC ("DePetris") seeking to build a drive-thru[1] Dunkin' Donuts establishment in Medford Township along with three adjacent retail buildings. Although coffee shops are allowed in the pertinent Community Commercial ("CC") zone in Medford, the zoning ordinance treats such businesses with a "drive-thru" component as only conditional uses. Hence, a use variance is required to enable the drive-thru feature.

DePetris applied to the municipality's Zoning Board of Adjustment ("the Board") for a use variance for the proposed project, along with several bulk variances. By a five-to-two vote, the Board rejected the application, substantially (albeit not exclusively) because of concerns about traffic impacts, in particular, customers who would be making left-hand turns into and out of the Dunkin' Donuts.

---

[1] Although the term "drive-through" would be more formal and traditional, we instead shall use "drive-thru" in this opinion, comporting with how the term is spelled in the record and the parties' briefs.

A-1287-20

DePetris challenged the Board's denial by filing a complaint in lieu of prerogative writs in the Law Division. The Law Division upheld the Board's decision, and this appeal by DePetris ensued.

For the reasons that follow, we must remand this matter because the Board's resolution failed to analyze DePetris's revision of its application at the end of the hearings. Specifically, the resolution assumed there would be "full movement access" to the Dunkin' Donuts by motorists at all hours, overlooking that DePetris agreed in its revised plan to a daily prohibition on left-hand turns out of the premises onto Taunton Road between the anticipated peak usage hours of 7:00 a.m. to 9:00 a.m. Because this revision appears to affect a key aspect of the use variance analysis, the matter must be reconsidered by the Board to take the revision into account and evaluate it explicitly.

I.

Since we are remanding the case, we need not detail the facts and procedural history at length. The following background will suffice for present purposes.

DePetris first applied for a use variance from the Board to build a drive-thru Dunkin' Donuts within a different parcel it owns, a retail complex known as the Village at Taunton Forge. That parcel fronts Tuckerton Road (Burlington

3

County Route 620) at a stoplight-controlled intersection with Taunton Road (Burlington County Road 623). At that intersection, Tuckerton Road consists of two lanes and runs northwest to southeast, while Taunton Road is a two-lane road that runs northeast to southwest. It is undisputed that the intersection is busy, particularly during rush hours.

By a five-to-two vote in 2017, the Board rejected DePetris's application for a use variance for a drive-thru Dunkin' Donuts at the Village at Taunton Forge parcel. That rejection was largely due to concerns about traffic and safety relating to left-hand turns out of the premises onto Tuckerton Road made by motorists heading northwest in the direction of Evesham Township and Philadelphia. In its 2017 resolution denying that application, the Board included the following suggestion:

> The Zoning Board finds that a more suitable and appropriate location for a Dunkin['] Donuts with [a] drive-thru may exist on the opposite side of Tuckerton Road (e.g.[,] where the recently vacant PNC Bank building is located). There, the [a.m.] traffic heading westbound to Evesham Township [on Tuckerton Road] could readily egress from a Dunkin['] Donuts drive-thru by a more manageable and safer right-turn.
>
> [(Emphasis added).]

DePetris challenged the Board's denial concerning the Village at Taunton Forge parcel, through a civil action in lieu of prerogative writs. The judge (now

4

retired) who presided over that case, agreed with DePetris's arguments and reversed the Board's decision and remanded for further proceedings. Thereafter, the Board appealed to this court. In an unpublished opinion issued by a different panel of this court, we reversed the Law Division and reinstated the Board's denial as to the first parcel. DePetris Family, LLC v. Medford Twp. Zoning Bd. of Adjustment, No. A-6009-17 (App. Div. Apr. 21, 2020).

Meanwhile, DePetris acquired the former bank parcel, which had previously had a drive-thru component, and again sought a use variance for a Dunkin' Donuts. This proposed project would also include several retail shops.

Specifically, in April 2019, DePetris[2] submitted an application to the Board for use and bulk variance approval to develop a 6,804 square foot retail shopping center, including an 1,804-square-foot Dunkin' Donuts with a drive-thru, and up to three adjoining retail or other uses. The site was the vacant 0.917-acre lot formerly occupied by the PNC Bank.

The Board reviewed this application at public hearings conducted on June 19, 2019 and July 17, 2019. Plaintiff presented four expert witnesses, including

---

[2] The business entity's name is slightly different than the owner of the first parcel, but it is clear that it is a related entity owned or controlled by James DePetris.

an architect, an engineer, a traffic consultant, and a professional planner, plus testimony from Mr. DePetris and the proposed operator of the Dunkin' Donuts.

The proposed access drive on Taunton Road is located 150 feet from the Tuckerton Road/Taunton Road traffic-light intersection. Plaintiff's traffic expert explained that, because of the "pass-by" nature of its business, the Dunkin' Donuts would not appreciably increase the number of vehicles traveling through the intersection. Instead, the establishment would tend to cause some motorists who were already on their journey to pull over briefly and use the drive-thru to obtain a morning coffee and other items. The drive-thru is expected during peak times to serve over 100 customers in an hour.

The traffic expert testified that the proposed Dunkin' Donuts, from a parking and traffic analysis, would be "complementary" to the three proposed retail stores, given the drive-thru's peak usage times before the retail stores would open. He stated that 95% of Dunkin' Donuts business traffic on weekdays is during the a.m. peak hours, i.e., between 7:15 and 8:30 a.m. Additionally, the Dunkin' Donuts would account for 70% of the site's traffic on Saturdays. He testified that 17% less traffic exists at the intersection during the morning commute than at other hours, and that the proposed Dunkin' Donuts would increase overall traffic at the intersection by only 1-3%.

A-1287-20

The expert estimated that 88% of all traffic patronizing the Dunkin' Donuts would use the drive-thru. He asserted the proposed drive-thru lane had been designed to permit queuing for up to nine motor vehicles. According to the expert, the average queuing, on the whole, would be four-to-five motor vehicles at a time, with an average of six during the peak hour.

Several residents testified in opposition to the project, nearly all of them expressing concerns about traffic impacts at the intersection. The municipal engineer and several Board members likewise voiced concerns about traffic impacts, especially customers in the morning who would be making left-hand turns out of the Dunkin' Donuts onto Taunton Road near the traffic light.

Near the end of the second day of hearings on July 17, a Board member asked plaintiff's counsel if DePetris would be willing to modify its application. The Board member noted that he regarded the left-hand turn onto Taunton as "problematic," and also expressed concerns about aspects of the bulk variances sought, particularly the deviation from lot coverage restrictions. Other Board members chimed in, likewise noting, among other things, the left-hand turn problems.

Plaintiff's counsel obtained a recess to confer with his client and experts about these concerns. When the hearing was resumed, plaintiff's counsel

7

announced that DePetris would agree "to restrict the left turn movements out onto Taunton Road from 7:00 a.m. to 9:00 a.m." Pursuant to this revised proposal, left turns into the Dunkin' Donuts would still be permitted at all hours.

A Board member asked plaintiff's counsel to clarify whether the proposed restriction on left-hand turns out of the parcel would only be in force on weekdays. Counsel responded that the restriction would be in force from 7:00 a.m. to 9:00 a.m., seven days a week. Counsel also agreed to other restrictions that did not involve traffic matters.

A roll call vote ensued, with two Board members voting in favor of the modified application and five voting nay.

The Board issued a resolution on August 21, 2019 rejecting the application. The resolution cited various reasons why DePetris had not persuaded a majority of the Board members that it had met its burden to establish the so-called "positive criteria" and "negative criteria" for a use variance under N.J.S.A. 40:55D-70(d) and Medici v. BPR Co., 107 N.J. 1, 18, 21 (1987). The resolution further explained why the bulk variances sought by DePetris concerning lot coverage and other items had also been rejected.

Critical to our review here, paragraph 38 of the resolution states the following about the traffic and left-hand-turn concerns:

A-1287-20

> The Zoning Board finds that Applicant's proposed plan for a <u>full movement access</u> at Taunton Road creates an unsafe ingress/egress and inefficient traffic circulation <u>for motor vehicles attempting a left-turn movement from the Dunkin['] Donuts onto Taunton Road</u>. This Zoning Board finding is supported by [B]oard members' personal knowledge of existing conditions at this highly-trafficked intersection and their understanding that the zoning prohibition of drive-thru's in the CC Zone is based, in part, on traffic considerations.
>
> [(Emphasis added).]

Notably, this analysis does not address the applicant's revised proposal that would restrict left-hand turns onto Taunton Road each day during peak hours of 7:00 a.m. to 9:00 a.m. The temporal restriction is mentioned in paragraph 35 of the resolution (although misstated as a six-day limitation) as a component of the modified application, but it is not analyzed.

Later, in the final paragraph of the resolution (number 44), the Board "emphasizes that the drive-thru traffic at a Dunkin['] Donuts during the [a.m.] peak hour is significantly higher and more intense than drive-thru traffic at a bank and pharmacy throughout a full business day." But this finding ignores the applicant's concession that it would disallow left-hand turns onto Taunton Road during peak morning hours.

9

When counsel argued this case before the Law Division in a remote hearing on June 5, 2020, the judge[3] pressed the Board's attorney about the significance of DePetris's agreement "not to have left hand turns during the peak morning hour[s]." The Board's counsel responded that drivers often do not "pay attention to those signs," although he cited no supporting data to substantiate this phenomenon or how frequently it occurs.

The judge issued an oral opinion affirming the Board's decision, agreeing that DePetris had not established the positive and negative criteria required to obtain a use variance, and, moreover, that the Board was justified in rejecting the applicant's multiple requests for bulk variances. The judge determined that the Board's decision was neither arbitrary nor capricious. This appeal ensued.

## II.

Generally, judicial review of a decision of a municipal planning board or board of adjustment is highly deferential. "[T]he law presumes that boards of adjustment and municipal governing bodies will act fairly and with proper motives and for valid reasons [and] . . . [a] local zoning determination will be set aside only when it is arbitrary, capricious or unreasonable." Kramer v. Bd.

---

[3] A different judge heard this application than the one who had heard the previous case involving the Village at Taunton Forge parcel.

of Adjustment, Sea Girt, 45 N.J. 268, 296 (1965); see also Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (reiterating the judiciary's limited standard of review of zoning board decisions). The plaintiff has the burden of proving the land use decision is arbitrary, capricious, or unreasonable. See Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Franklin, 233 N.J. 546, 558 (2018).

That said, a municipal land use board's interpretation of the law is reviewed de novo and is not entitled to deference. Dunbar Homes, 233 N.J. at 559 (citation omitted). In addition, the record must contain sufficient evidence to support the land use board's factual findings. Darst v. Blairstown Twp. Zoning Bd. of Adjustment, 410 N.J. Super. 314, 325 (App. Div. 2009) (citation omitted).

With respect to obtaining use variances, the law prescribes that an applicant has an enhanced burden. The applicable statute provides:

> No variance or other relief may be granted under the terms of this section . . . without a showing that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.
>
> [N.J.S.A. 40:55D-70(d) (emphasis added).]

The grant of a use variance pursuant to this section requires proof of both "positive and negative criteria." Sica v. Bd. of Adjustment of Wall, 127 N.J. 152, 156 (1992).

In cases where the asserted use is not inherently beneficial to the public good, the applicant's proof of "positive criteria" requires a showing that special reasons exist to grant the use variance. See N.J.S.A. 40:55D-70(d). These "special reasons" are defined by the general purposes of the zoning laws, as codified in N.J.S.A. 40:55D-2. Burbridge v. Twp. of Mine Hill, 117 N.J. 376, 386 (1990). The asserted positive criteria must be site-specific, in that the applicant must show that the proposed use is "peculiarly fitted to the particular location for which the variance is sought." Kohl v. Mayor of Fair Lawn, 50 N.J. 268, 279 (1967) (citations omitted) (emphasis added). In the years since Kohl was decided, that requirement has not changed. Medici, 107 N.J. at 18.

Meanwhile, the "negative criteria" requirement of subsection (d) incorporates two distinct, but related, forms of proof. First, an applicant must show that the non-conforming use of the property will not cause "substantial detriment to the public good." N.J.S.A. 40:55D-70(d). The focus of this criterion is also site-specific, and requires an assessment of the proposed

12

variance's impact on the surrounding properties, and whether it will cause "damage to the character of the neighborhood." Medici, 107 N.J. at 22 n.12.

A second demonstration required under the negative criteria prong of subsection (d) is a showing that the proposed non-conforming use "will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70(d). The burdens involved in making this showing were substantially increased by the Supreme Court in Medici. Specifically, since Medici, applicants seeking a use variance must now offer "an enhanced quality of proof . . . that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance." Medici, 107 N.J. at 21. Such "enhanced proof" must "reconcile the proposed use variance with the zoning ordinance's omission of the use from those permitted in the zoning district." Ibid.; see also Saddle Brook Realty, LLC v. Twp. of Saddle Brook Zoning Bd. of Adjustment, 388 N.J. Super. 67, 75 (App. Div. 2006).

In applying these factors, zoning boards of adjustment must make "clear and specific findings" as to the positive and negative criteria underlying their decisions. Medici, 107 N.J. at 21. A board's resolution granting a use variance must therefore contain sufficient findings to allow a reviewing court to conclude

13

that the board rigorously performed the required analysis of the proposed variance's compatibility with the master plan and zoning ordinance. Id. at 23.

With these principles in mind, we proceed to address at this time two facets of this case, one of which requires a remand.

The first issue we address is the legal significance of the Board's comment in its resolution concerning the first parcel, insofar as it suggested that DePetris consider applying for a use variance for the vacated bank parcel across the street. We agree with the Law Division judge that the comment was merely a suggestion and should not guide the present litigation.

For one thing, the passage used the word "may," which is indicative of something that is possible but not mandated. In re State Bd. of Educ. Denial of Petition, 422 N.J. Super. 521, 532 (App. Div. 2011).

Second, as the judge rightly noted, the Board's suggestion concerned another Dunkin' Donuts drive-thru, not a more expansive application that includes three retail stores and a number of necessary bulk variances. We agree that the earlier resolution is legally inconsequential.

The second point we address is more concerning. For reasons that are unclear, the traffic impact analysis in paragraph 38 of the Board's resolution says nothing about DePetris's express revision of its application to include a peak-

hour prohibition on left-hand turns out of the premises onto Taunton Road. As we have recounted, that modification was tendered by DePetris in direct response to concerns about left-hand turns expressed by the township engineer, several Board members, and members of the public. The Board voted on the modified application, not the original version.

Because a substantial portion of the Dunkin' Donuts customers are expected to patronize the drive-thru during the morning rush hours, and then business slackens later in the day, the peak-hour concession potentially could have a material impact on the traffic analysis. But the Board said nothing about it within its evaluation. The non-evidential comments by its counsel at oral argument in the Law Division about disobedient drivers, although perhaps intuitively correct, cannot salvage the omission.

N.J.S.A. 40:55D-10(g) requires municipal land use boards to render written findings of fact and conclusions on "any application for development." The importance of this obligation was underscored by the Supreme Court in Medici, 107 N.J. at 21, 23. Here, we cannot tell from the resolution why the Board majority deemed the seven-day peak-hours limitation on left turns onto Taunton Road inadequate to address the traffic objections.

A-1287-20

The Court has expressly "discouraged" reviewing courts from exercising original jurisdiction over factfinding in land use cases. Price v. Himeji, 214 N.J. at 294. Only when "[n]o useful purpose would be served by remanding the matter" may we decide the land use issue in the first instance. Ibid. (alteration in original) (quoting Bressman v. Gash, 131 N.J. 517, 529 (1993)); see also Urban v. Planning Bd. of Manasquan, 124 N.J. 651, 663 (1991) (remanding a case to a land use board, with instructions to consider an applicant's amended application).

Although the Board's rejection of DePetris's application also concerned non-traffic considerations, including the bulk variance requests, we cannot determine whether such factors would have defeated the application without the traffic concerns. Clearly the traffic concerns were a major part of the proceeding and the commentary. It is not our role to read the minds of the decision-makers.

Thus, we must remand this case to the Law Division, which in turn is directed to remand the matter to the Board for further consideration and the issuance of a new resolution. Either party is free to adduce further relevant evidence on the traffic issues before the Board, including, for example, any data that may exist or be compiled about the compliance of motorists with rush-hour

16

turn limitations and signage, as well as expert analysis of how the rush-hour limitation would be expected to impact the volume and flow of vehicles.

We express no views about the merits, and decline to comment at this time about the separate bulk variances.

Vacated and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION