**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3422-22

MICHAEL SPILLE,

     Complainant-Appellant,

v.

KEVIN KOVELOSKI, MARTHA
DENNIS, DIANA PURSELL,
FILOMENIA HENGST, JIM
GALLAGHER, RONI
TODD-MARINO, LAUREN
BRAUN-STRUMFELS, TRACI
PACIULLI, MEAGAN
WARNER, SOUTH HUNTERDON
REGIONAL BOARD OF
EDUCATION, and
HUNTERDON COUNTY,

     Respondents-Respondents.

_____

NEW JERSEY DEPARTMENT
OF EDUCATION, SCHOOL
ETHICS COMMISSION,

     Respondent.

_____

Argued February 4, 2025 – Decided March 7, 2025

Before Judges Smith and Chase.

On appeal from the New Jersey Department of Education.

Matthew C. Moench argued the cause for appellant (King, Moench & Collins, LLP, attorneys; Michael Spille, on the briefs).

Kerri A. Wright argued the cause for respondents (Porzio, Bromberg & Newman, PC, attorneys; Kerri A. Wright, of counsel and on the brief; Thomas J. Reilly, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent School Ethics Commission (Sadia Ahsanuddin, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Complainant, Michael Spille, appeals the School Ethics Commission's ("SEC") final agency decision dismissing his amended ethics complaint against the South Hunterdon Regional Board of Education ("Board") and its members: Kevin Koveloski (President), Filomena Hengst (Vice President), Lauren Braun-Strumfels, Martha Dennis, Jim Gallagher, Traci Paciulli, Diana Pursell, Roni Todd-Marino, and Megan Warner. According to Spille's complaint, respondents violated multiple provisions of the School Ethics Act, N.J.S.A. 18A:12-21 to -34 ("Act"), during the process to pass a referendum for the renovation of two

2                                                                          A-3422-22

schools within the South Hunterdon Regional School District ("District"). We affirm.

## I.

The Board oversees schools in Lambertville, Stockton, and West Amwell. The District planned to improve two elementary schools: Lambertville Public School ("LPS") and West Amwell School ("WAS"). In April 2021, the Board voted unanimously to place a referendum on the November 2021 ballot seeking public approval to sell a $33 million bond to implement the renovations.

In August 2021, the Board published general information about the referendum and proposed renovations to the two schools. The information discussed how the renovations would lead to increased property values throughout the District and mentioned that "LPS repairs . . . are long overdue while WAS has structural issues and site challenges."

The Board also released a "Referendum FAQ," which among other things, discussed the potential impact on property values. The Board also produced a video featuring Board President Koveloski discussing the possible consequences of a failed referendum. That same month, the superintendent announced twenty-four general information sessions for the public to learn more. The Board released a second video on September 21, 2021, in which Koveloski discussed

3

the impacts of area flooding on one of the schools. Koveloski concluded the video with a message stating, "Please remember to vote on November 2nd. The future of students depends on it."

On October 6, 2021, Koveloski and Gallagher appeared before the West Amwell Township Committee as members of the Board and asked the Township Committee to stay neutral when considering the referendum. That month, lawn signs with the message "Vote Yes" also began appearing throughout the community. While the Board did not create, authorize, or place the signs, the signs used the District's color scheme, crest, and displayed the District's official website address.

Soon after, Koveloski posted to the Lambertville and West Amwell Facebook pages supporting the referendum. He further explained that he was making the post as a "tax paying resident of West Amwell [T]ownship." Koveloski did not include a disclaimer stating that he was not speaking as a member of the Board. The posts included a link to the District's website, which appeared with a picture of the District's crest. Additionally, Koveloski wrote, "Please do not let the so-called social media experts persuade you in any way with their negativity, false statements, and bad information."

4

In October, the Board also released a monthly newsletter with information about the referendum, links to the videos, and a reminder to vote on November 2nd. The newsletter stated that LPS repairs were long overdue and that WAS presented structural and site challenges. During the same month, Gallagher made a series of Facebook posts regarding the referendum. One post purported to answer several questions about the referendum. Gallagher's posts made clear that he was speaking as a member of the public, not as a Board member. Board member Pursell also posted on the West Amwell Facebook site advocating for the referendum. Although Pursell disclaimed her Board membership, she included her District email address on the post.

Before the election, the Board released to the public a third video detailing a former student's experience navigating LPS as a disabled individual. The video highlighted various parts of the school that are out of ADA compliance. The video also included a message stating "Please Vote on November 2nd." The Board also sent out postcards to all residents within the District containing financial information related to the referendum, while also including another reminder to vote.

A-3422-22

During the time the referendum was pending, defendant board members Braun-Strumfels, Todd-Marino, Warner, and Hengst also actively served on the committee for a grassroots organization formed in 2017 known as "SaveLPS."

On November 2, the District voters approved the referendum by two votes out of a total of 3,544 votes. A subsequent recount did not change the outcome.

Complainant filed an initial complaint with the SEC, alleging members of the Board collectively and individually violated the Act. Complainant asserted the materials set forth by the Board were highly biased and intended to influence the electorate to vote "yes" on the referendum. After curing technical defects in his initial complaint, he filed an amended complaint.

Complainant's amended complaint centered on three specific subsections of the Code of Ethics for School Board Members ("Code"): N.J.S.A. 18A:12-24.1(e) ("subsection (e)"), forbidding board members from "mak[ing] personal promises or tak[ing] private actions that may compromise the board"; N.J.S.A. 18A:12-24.1(f) ("subsection (f)"), requiring board members not to "surrender their independent judgment to special interest or partisan political groups"; and N.J.S.A. 18A:12-24.1(g) ("subsection (g)"), requiring board members to hold certain matters confidential and to refrain from providing inaccurate information to the public.

Complainant alleged that respondents Gallagher, Koveloski, Hengst, Braun-Strumfels, Warner, Todd-Marino, and Pursell violated subsection (e); that defendants Hengst, Braun-Strumfels, Todd-Marino, and Warner violated subsection (f); and that the Board, Koveloski, Gallagher, Hengst, Braun-Strumfels, Warner, and Todd-Marino violated subsection (g). In lieu of filing an answer, all respondents moved to dismiss. Complainant opposed and sought leave to amend the complaint to include new violations. In a written decision, the SEC denied complainant's motion to amend and dismissed the complaint.

Even assuming the factual allegations in the complaint were true, the SEC found complainant failed to plead sufficient credible facts to support a finding that respondents violated the Code. Regarding violations of subsection (e) the SEC found, complainant "failed to provide sufficient factual evidence that the named respondents made personal promises or took action beyond the scope of their duties such that, by its nature, had the potential to compromise the Board." Likewise, the SEC found the allegations would not support a finding that respondents Hengst, Braun-Strumfels, Warner, and Todd-Marino violated subsection (f). The SEC further explained it "is only when their vote inures a unique and specific benefit to them, to the exclusion of all others, that a violation may be viable."

7

As to the alleged violations of subsection (g), the SEC stated:

> In Counts 1-8, Count 12, Counts 14-15, and Count 18, Appellant submits that [respondents] violated N.J.S.A. 18A:12-24.1(g). At its core, the Counts contend that "the Board" acted unethically because it did not provide accurate information, and/or presented biased or incomplete information to the public regarding the referendum. In its review, the Commission finds that [Appellant] has not articulated exactly how any of the named Respondents may have specifically violated the confidentiality provision of N.J.S.A. 18A:12-24.1(g). Instead, Appellant offers nothing more than general and vague conclusory statements about what the "Board" may have done, but does not offer any detailed facts evidencing how the named Respondents may have engaged in unethical conduct. Because such generalized accusations are wholly insufficient to satisfy Appellant's burden of proof, the Commission finds that the alleged violations of N.J.S.A. 18A:12-24.1(g) in Counts 1-8, Count 12, Counts 14-15, and Count 18 should be dismissed.

The SEC found appellant's subsection (g) allegations against individual respondents violating subsection (g) were "equally unsupported by specific evidence of unethical behavior."

On appeal, complainant contends: the SEC erred in denying leave to amend his complaint; a SEC advisory opinion and its own precedents support a conclusion that the Code was violated; and the SEC failed to review the allegations in the light most favorable to him, and the SEC's determination ignores the statutory purpose of the Act.

## II.

### A.

Our scope of appellate review with respect to a final agency decision is limited. Aqua Beach Condo. Ass'n v. Dep't of Cmty. Affairs, 186 N.J. 5, 15-16 (2006). We are not bound by an agency's interpretation of a statute. In re State Bd. of Educ.'s Denial of Petition to Adopt, 422 N.J. Super. 521, 530 (App. Div. 2011). Our review of legal questions is de novo. Ibid. However, "Appellate courts must defer to an agency's expertise and superior knowledge of a particular field." Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992). Moreover, "a court may not substitute its own judgment for the agency's even though the court might have reached a different result." Ibid.

It is well settled that an agency decision will be upheld on appeal unless it is shown to be "arbitrary, capricious[,] or unreasonable, or that it lacked fair support in the evidence . . . ." Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963). "The burden of demonstrating that the agency's action was arbitrary, capricious[,] or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div.), certif. denied, 188 N.J. 219 (2006).

B.

Prior to its repeal, N.J.A.C. 6A:28-8.3[1] provided that "[i]n determining whether to grant a motion to dismiss, the SEC shall review the facts in the light most favorable to the Complainant and determine whether the allegation(s), if true, could establish a violation of the Act." The language mirrors the standard for dismissal of a complaint pursuant to Rule 4:6-2(e). Thus, as in a Rule 4:6-2(e) motion, the SEC is required to "'search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co., 256 N.J. 294, 311 (2024) (citing Printing Mart-Morristown v. Sharp Elecs. Corp., 116

---

[1] N.J.A.C. 6A:28-8.3 was repealed on March 6, 2023. See N.J.A.C. 6A:28-8.3 (Feb. 2023) (repealed Mar. 2023). However, complainant filed his complaint, and respondents filed their motion to dismiss, prior to the regulations repeal. "'Generally, a regulation only applies prospectively. A regulation may apply retroactively if the Legislature or agency has expressed that intent, either explicitly or impliedly, and retroactive application would not cause a manifest injustice or an interference with a vested right.'" L.R. ex rel J.R. v. Cherry Hill Bd. of Educ., 473 N.J. Super. 568, 579 (App. Div. 2022) (citations omitted) (quoting Rahway Hosp. v. Horizon Blue Cross Blue Shield of N.J., 374 N.J. Super. 101, 112 (App. Div. 2005)). We decline to impute retroactive intent to the repeal of N.J.A.C. 6A:28-8.3.

N.J. 739, 746 (1989)) (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)).

We note the Legislature has declared that school board members and administrators must conduct themselves so as to "avoid conduct which is in violation of their public trust or which creates a justifiable impression among the public that such trust is being violated."  N.J.S.A. 18A:12-22(a).  To that end, the Legislature has also declared that public confidence in school members is preserved through "specific standards to guide their conduct . . . ."  N.J.S.A. 18A:12-22(b).  Our analysis is informed by these principles.

III.

We affirm the dismissal of appellant's amended complaint, substantially for the reasons expressed by the SEC in its cogent written opinion.  We add the following brief comments.

First, complainant argues the SEC improperly denied his request for leave to amend the complaint to include the findings from an Open Public Records Act ("OPRA") request.  He further contends the denial was due to the SEC's failure to utilize the "liberality and generosity" test, and the denial prevented the surfacing of new inculpatory evidence against respondents.

The process for filing an original complaint is detailed at N.J.A.C. 6A:28-6.2, which permits either the filing of an original hard copy complaint and exhibits with the SEC and additional copies for each named respondent or electronic filing with the SEC and hard copies mailed to each named respondent. Pursuant to N.J.A.C. 6A:28-6.7(b), "[a] [complainant] may amend a complaint to cure technical defects or to clarify or amplify allegations made in the original complaint." N.J.A.C. 6A:28-6.2(a)(1) to (2). And, N.J.A.C. 6A:28-6.7(c) states, "[o]nce a written statement is filed, an amendment to a complaint may be made by the appellant only with the consent of each respondent or by leave of the [SEC] upon written application." Further, "[a]ny amendment made by the [complainant] . . . shall be submitted in the same manner as the original complaint with one copy, together with a copy for each respondent." N.J.A.C. 6A:28-6.7(d).

While N.J.A.C. 6A:28-6.7(d) governs how the amended complaint, once approved, should be submitted to the SEC and respondents, it does not dictate the manner in which leave to amend is requested. That said, complainant submitted his request for amendment properly and in accordance with N.J.A.C. 6A:28-6.7(c).

A-3422-22

However, complainant's amendment motion sought to add new claims. N.J.A.C. 6A:28-6.7(b) does not permit the addition of new claims, only the clarification or amplification of claims which were part of the original complaint. Complainant admitted that he wanted to add new claims related to documents he obtained pursuant to OPRA.[2] Since he sought to add allegations to his complaint based on documents, he received in response to his OPRA request, the SEC's denial of leave to amend the complaint was proper.

To the extent we have not specifically addressed any other contentions raised by respondents, they lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

---

[2] Complainant has not provided a copy of his amended complaint demonstrating how the information he received in response to his OPRA request would support his existing claims. At oral argument he conceded he could have filed a new complaint with the information he received.

A-3422-22